## SPOONER *vs.* THE BROOKLYN CITY RAIL ROAD COMPANY.

In the case of travel by passengers upon an ordinary highway, in a public conveyance—especially when the highway is a crowded city street—the possible negligence or misconduct of the owners or drivers of other vehicles, over whom the carrier has no control, is a risk which a passenger cannot cast upon the carrier, but must, so far as the latter is concerned, take upon himself.

Hence, if a passenger in a vehicle upon a city street voluntarily assumes a position which is not intended and ordinarily used for the conveyance of passengers, and which is exposed to danger from such misconduct, he himself contributes to an injury which he sustains by a collision produced by the willful or the negligent acts of a third party, without any fault in the management of the vehicle which carries him.

Under such circumstances it is well established that he cannot recover against the carrier.

THIS was an appeal by the plaintiff from an order of the city court of Brooklyn, dismissing the complaint, made on the second trial of this action. The case, upon the appeal from the judgment rendered after the first trial, is reported in 31 *Barbour*, 419. It appeared, on the second trial, that the defendants were carriers of passengers in the city of Brooklyn, using a stage sleigh for that purpose. The plaintiff took passage on one of their sleighs, to be conveyed from the corner of Bond and Fulton streets, through Fulton to Orange street. While standing on the left guard or fender of the sleigh, he was injured by a blow given to him by a coal sleigh which was in the act of passing the defendants' sleigh. The defendants' driver was driving their sleigh on the right side of the street, his horses moving slowly, and tried to avoid the collision. The coal sleigh, which was driven very fast, slid down sideways, broke the rails and the stanchions of the stage sleigh close up to the body, knocked the plaintiff off from the defendants' sleigh, and mashed him in towards the defendants' sleigh body, causing the injuries.

The foregoing and other facts having been proved, a motion was made to dismiss the complaint. The plaintiff's counsel requested the court to submit five several questions

to the jury, viz: 1st. Whether the defendants were not guilty of negligence in constructing these foot boards, on which they carried passengers, without constructing guards for the foot boards ?  2d. Whether these foot boards were not placed on their sleighs for the purpose of conveying passengers, and whether they were not unsafe for that purpose ?  3d. Whether the plaintiff was not invited by the defendants to take the place on the sleigh where he stood at the time of the collision ?  4th. Whether the plaintiff was himself guilty of any negligence in placing himself where he stood when injured ?  5th. Whether the defendants might not have avoided the collision by care and skill at the point of the accident, and whether the injury was not occasioned by their negligence and that of their driver, in not avoiding the collision ?

The complaint was dismissed, to which, and to the refusal to charge each of the foregoing requests, the plaintiff separately excepted.

*J. M. Van Cott.* for the appellant.

*G. T. Jenks,* for the defendants.

EMOTT, J.  We are of opinion that this case was devoid of any evidence upon the recent, as it was upon the former trial, imputing negligence to the driver of the sleigh in which the plaintiff was riding.  He was driving slowly and cautiously, and turning out of the way of the sled which came in collision with him.  It was the reckless approach and the sudden turn and swing of the latter which brought the two together, and for this the defendants' driver was not to blame. The city judge correctly refused to submit to the jury whether the driver of the defendants' sleigh was guilty of negligence, or whether he might not have avoided the collision.  It is possible that if he had foreseen the conduct of the driver of the coal sled which was approaching him, he might have avoided a collision, because he might have driven his own

sleigh into such a place or position that it would have been beyond the reach of that, or of any passing vehicle. But this he was not bound to do. He was bound to exert the utmost skill and care to avoid the ordinary dangers of the road, but not to foresee or guard against the willful misconduct, or the gross negligence of others, except so far as he could do so after he was aware of the course they were pursuing.

The evidence shows very plainly the character and purpose of the part of the sleigh upon which the plaintiff was riding. It was a projecting fender, intended to protect the body and the runners of the vehicle in case of contact with other objects. The most that can be said, or that a jury could have found in respect to the use of these fenders for the conveyance of passengers, would be, that they were made of broad boards instead of rails, so that when the sleigh was full inside, persons could stand upon them, and that under such circumstances fare was collected from persons riding there. I do not say that this evidence satisfies me that these fenders were made for such a purpose; quite the contrary. But at most, the evidence can only prove what I have stated. Then the question would arise, whether the defendants are liable because they permitted a part of their vehicle to be used for conveying passengers which was exposed to danger from the carelessness of others. That the defendants were bound to furnish a safe and roadworthy vehicle, is undeniable; but that means roadworthy for its own proper use, and safe in the contingencies of travel in such use. If in the ordinary passage through the street, without encountering carelessness or misconduct on the part of other vehicles, these foot boards were insecure, if the plaintiff had been injured because he was riding upon them, without the negligence or misconduct of any other person or vehicle, the case would be different. But the responsibility of a carrier does not extend to provide a vehicle which shall be secure against the mis-

conduct of others, he himself being free from blame in all other respects.

It is conceding too much, however, to say, that upon this evidence the jury could have found in the terms of the proposition submitted to the judge at the trial, that fenders were placed on this sleigh for the purpose of conveying passengers. If they were not placed upon the sleigh expressly for that purpose, it was the plainest negligence in the plaintiff to occupy a position upon them, contributing as this did, so materially to his injury. In the case of *Willis* v. *The Long Island R. R. Co.*, (32 *Barb.* 398,) which was cited on the argument, I said: "The essential element of negligence in such a case is a disregard of some risk which the passenger ought to anticipate." "A passenger is not bound to anticipate a collision, or that the train will be thrown from the track. He has a right to expect that he will be carried safely; that the carrier will discharge his duty; will provide a safe vehicle. and an unobstructed track, and that the passengers will be exposed to no risk, but those incident to that mode of travel. It is not, in my judgment, negligence in a passenger to occupy a position which will involve increased risk to him of the consequences of negligence and misconduct of the carrier." "He cannot be charged with neglect for omitting to provide against the possible consequences of the misconduct of the carrier." It was very strenuously insisted, that these and other expressions of that opinion, and the rules laid down in that case, are inconsistent with the rulings at the trial of the present cause. The inference is sought to be drawn, that it was no more negligent for the present plaintiff to ride upon the fender of a sleigh, than it was for the plaintiff in the case referred to, to ride upon the platform of a rail road car. But it must be considered, that in the case of a rail road train there can hardly be said to be any risks that are not incident to, and inseparable from, the mode of transportation; except such as result from the negligence and misconduct of the carrier; at least, none other were considered in the case referred to.

Spooner *v.* Brooklyn City Rail Road Company.

The carriers, the rail road company, have exclusive control, not only of the vehicle and the motive power, but of the road itself, and of all the vehicles moving upon it. A collision with another vehicle, if it occur, must be the result of their own conduct, and not, as it may be in the case of a common road, the result of the action of independent agents. The principle enunciated in the case of *Willis* v. *The Long Island Rail Road Company* was, that a passenger was not bound to anticipate, nor to protect himself against the consequences of the misconduct of the carrier. The risk of such misconduct—the risk of an insufficient vehicle which may break down, or its unskillful management which may destroy it—he is not to assume to be incident to travel by that conveyance. So in the case of a rail road, the danger of the existence of obstructions or imperfections of the track, or the mismanagement of other cars or trains upon the same road, which are in fact all a part of the same conveyance, is not a risk which a traveler must consider incident to the mode of conveyance. But in the case of travel upon an ordinary highway, especially when the highway is a crowded city street, every prudent man knows that he is to meet numerous vehicles, the conduct of which no one but their owner or drivers control. The carrier who is transporting him cannot control, and is under no obligation for their behavior, and their possible negligence or misconduct is a risk which the passenger cannot cast upon the carrier, but must, so far as the latter is concerned, take upon himself. If therefore a passenger in a vehicle upon a city street voluntarily assumes a position which is not that intended and ordinarily used for his conveyance, and which is exposed to danger from such misconduct, he himself contributes to an injury which he sustains by a collision produced by the willful or the negligent acts of a third party, without any fault in the management of the vehicle which carries him. Under such circumstances the rule is well established that he cannot recover against the carrier.

We are unable to see how the plaintiff can maintain an action against the defendants for his injuries, lamentable as those injuries have been, and we must therefore affirm this judgment.

BROWN, J. concurred.

SCRUGHAM, J. dissented, on the ground that the 2d and 3d questions proposed by the plaintiffs' counsel should have been submitted to the jury.          Judgment affirmed.

[KINGS GENERAL TERM, February 10, 1862.  *Emott, Brown* and *Scrugham,* Justices.]