For error in the judgment of the Circuit Court, reverse the same, and dismiss the case.

## L. R. & FT. S. R'Y. v. MILES.

1. **RAILROAD:** *Traveler on a drover's pass. Rights and liabilities*: A passenger on a railroad on a drover's pass is a passenger for hire, and has the same rights, and is under the same obligations to conform to the reasonable rules of the company as if he had bought his ticket.

2. **SAME:** *Negligence: Extent of liability for*: Carriers of passengers by steam are held to the highest degree of care, and are responsible for the smallest negligence.

3. **SAME:** *Same: Cars leaving track is evidence of*: The fact of cars having left the track is *prima facie* evidence of negligence on the part of the company.

4. **SAME:** *Duty of passengers; contributory negligence*: The absence of reasonable care and caution on the part of an adult plaintiff will prevent a recovery for the negligence of the company. It is his duty to inform himself of the regulations of the company for running its trains, and to occupy a seat inside the passenger cars when one is to be had; but if he should ride in an improper place with the permission or acquiesence of the conductor, this would exempt him from blame, and in case of accident resulting from the company's negligence he might recover damages.

5. **SAME:** *Station agent: his authority*: A railroad station agent has no implied authority to direct a passenger where to ride, and if a cattle drover, by direction of such agent, and without the direction or acquiesence of the conductor, ride upon the top of the cattle car instead of in the pas-

senger car attached to the train, and is there injured by an accident which would not have injured him if in the passenger car, he cannot recover for the injury unless he proved express authority to the agent to give such directions.

6. PRACTICE: *General and special verdicts:*

When a jury returns into court a special finding of the facts which is inconsistent with their general verdict, the Court should disregard the general verdict and render judgment upon the special finding; and upon its refusal to do so, this Court will reverse the judgment and direct judgment upon the special verdict to be entered by the Circuit Conrt.

APPEAL from *Johnson* Circuit Court.

Hon. G. S. CUNNINGHAM, Special Judge.

*Clark & Williams* for appellant.

1. Appellee was not a passenger; *the relation of carrier and passenger did not exist between the company and him.* but if he was technically a passenger, he was barred by reason of his contributory negligence in riding on the top of a freight car when there was a passenger car provided for him in which it was his duty to have been, and which was not involved in the calamity. The station agent was utterly without authority, both in law and in fact, to give him permission to ride on top of the car. , See *Ind. R. Co. v. Horst,* 3 *Otto, U. S ,* 291; *Sygo v. Newbold,* 9 *Exch.,* 309; *Eaton, v. Del., L. & W. R. Co.,* 57 *N. Y.,* 382; *Robertson v. N. Y. & E. R. Co.,* 22 *Barb.,* 91; *Cardall v. N. Y. & N. H. R. Co.,* 1 *Duer,* 571; *Lawrenceburg & Miss. R. Co. v. Montgomery,* 7 *Ind.,* 476; *Dunn v. G. T. R. Co.,* 58 *Me.,* 187 ; *Southern R. R. v. Hendricks,* 40 *Miss.,* 374; *Dayett v. Ill. Cent. R. Co.* 34 *Iowa,* 284; *Galligan v. Harlem R. Co.,* 13 *D. Smith,* (*N. Y.*) 453; *Hutchison on Carriers, sec.* 554; *Shear. and Redf. on Neg., sec.* 264; *Spooner v. Brooklyn R. Co.,* 36 *Barb.,* 217; *Great N.R. Co. v. Harrison,* 26 *Law and Eq., R.* 443; *Downey v. Hendrix,* 13 *Cent. Law Jour.,* 371; *Camden & A. R. Co.*

*v. Hoosey, S. C. Pa., Feb.* 20, 1882; 7 *Railway Age, No.* 35, *p.* 481.

2. The special findings of the jury entitled defendant to judgment, notwithstanding the general verdict. See *sections* 4678, 4680, 1106, *Proffatt on Jury Trials, sections* 439, 440 *and cases cited; Kearney v. Chicago M. & St. P. Co.,* 47 *Wis.,* 144.

3. The Court erred in permitting plaintiff to prove that the station agent directed or gave permission to ride on top of the car. The evidence was illegal, first, because it was entirely outside of the agent's authority to give any such permission; and second, because such permission could at most be the permission of the company, and the authority of the company would not annull the effect of his own contributory negligence in riding there, *i. e.,* the company would thereby only assume the relation to him of carrier to passenger, and *not the extra risk of riding there.* In addition to authorities above cited see *Snyder v. H. & St. Joe R. Co.,* 60 *Mo.,* 413; *Flower v. Penn. R. Co.,* 60 *Penn. St.,* 210.

4. It was contrary to the regulations of the company to ride on top of a freight car. Appellee was bound to know these regulations and abide by them, and the company did not assume the extra hazard. *Ind. R. Co. v. Horst,* 3 *Otto* (*U. S.*) 290; *Pittsburgh, Cin. & St. L. R. Co. v. Nueen,* 50 *Ind.,* 141; *P. & C. R. Co. v. Sentmeyer,* 92 *Pa. St.,* 276; *Cheney v. Boston & Mame R. Co.,* 11 *Met.* 121; *Penn. R. Co. v. Langdon,* 92 *Pa. St.,* 21; *Galena R. R. Co. v. Yarwood,* 15 *Ill.,* 468; *Shear & Red., on Neg., section* 554.

5. For cars to run off the track makes a *prima facie* case of negligence, but it is only presumptive, and may be rebutted. The evidence rebuts this presumption, but admitting that it does not, plaintiff's injury was not the natural or proximate effect of such negligence, because he was not a passenger, but a wrong-doer, and the company was under no

obligation to protect him as a passenger, and if technically a passenger he is barred by his own contributory negligence.

*Dan B. Granger* for appellee.

Plaintiff was a passenger for hire. 3 *Redf. on Railways*, 5th *Ed.*, 248, *sec.* 8, *note* 12; *Ib.*, 224, *note* 7 *to p.* 220; *Ingalls. v. Bills*, 9 · *Met.*, 1; 1 *Addison on Torts, Dudley & Baylis' Ed.*, (4th *Eng.*) 467 *to* 469 *and notes o, p, r and s;* 2 *Ib.*, 1103; 1 *Redf. on Railways*, 5th *Ed.*, 235 *to* 39 *inclusive.*

—The second instruction for plaintiff was properly given. 2 *Add. on Torts*, 472 *and* 514.

Cites in favor of third instruction: 1 *Add. on Torts*, 467 *et seq., and* 24 *to* 27 *inclusive.*

The fourth proper. See authorities last cited and 1 *Add. on Torts*, 495 *and* 516.

The fifth clearly the law. *Ib.* 30 *to* 33 *inclusive*, 468 *and notes and* 514.

On the sixth cites: *Ib.*, 476-7; *Broom & Hadley's Com., Vol.* 1 *Waite's note*, 337 *to* 343; *Corgrove v. Ogden*, 49 *N. Y.*, (4 *Sick.*) 255.

On the seventh cites authorities on first and fourth instructions, and 1 *Add. on Torts*, 517, *note g.*

The eighth proper. *Sedgwick on Damages*, 468, *note* 2.

Argues upon the instruction asked by defendant and cites 2 *Redfield on Railways*, 248, *sec.* 8 *and notes*, and authorities *supra.*

It was the duty of defendant's agent to give correct information, proper directions, etc., and he was acting within the scope of his employment and in discharge of his duty. It is the duty of a station agent, and within the scope of his authority, to give correct information to passengers. Plaintiff did not *voluntarily* ride on top of the car. He was *directed* to do so by the agent of the company, who had au-

thority to inform him, and he had a right to rely on the information given. *St. L. I. M. & S. R. Co. v. Cantrell*, 37 *Ark.*, 519.

The happening of the accident was *prima facie* proof of negligence. Plaintiff was on top by no voluntary act of his own; he was ignorant where he ought to or could ride, and his being on the car was through the negligence and fault of defendant, acting through her agent, who *directed* him to ride there, when he should have directed him to the passenger car. *Ind. R. Co. v. Horst*, 3 *Otto, U. S.*, 291.

Distinguishes between one's being *voluntarily* in a position of danger, and being there by the requirement, direction or negligence of the defendant. In all the cases cited by counsel for appellant the injured party voluntarily *sought* the danger or voluntarily took such position by the *permission* or *invitation* of the carrier or its agents or employees.

The cases of *Lygo v. Newbold*, 9 *Exch.*, 309; *Eaton v. Del., L. & W. R. Co.*, 57 *N. Y.*, 38;2 *Downey v. Hendric*, 13 *Cent. Law Jour.* 371, are not in point. Plaintiff was *not* in the position *voluntarily* or by *permission*, but by the wrongful *directions* of defendants agent, *and his being in such dangerous position was the fault and negligence of the defendant in not giving him correct information and directions when applied to.*

STATEMENT.

SMITH, J. This was an action to recover damages for a personal injury suffered by the plaintiff while a passenger on defendant's train of cars. The accident occurred by reason of the cars leaving the track, inflicting permanent injuries upon the plaintiff by the fracture of his ribs and collar-bone and contusions of the head. And the proximate cause of the cars flying the track is alleged to have been the negligent failure of the defendant to provide and maintain a safe and sufficient track and road-worthy carriages. The defendant

denied that the plaintiff was a passenger at the time he was hurt and set up contributory negligence on his part in climbing upon the top of a freight car and riding there, without the defendant's consent or authority and without the knowledge of the conductor of the train.

Three several trials were had. At the first the plaintiff obtained a verdict for $10,000; at the second, a verdict for $15,170, and at the last, a verdict for $4,000, which was ordered to stand.

The following was the evidence:

On the fifteenth day of October, 1875, the defendant, the railway, then being completed to Altus, in Franklin county, only, and that being the western terminus of the road, the plaintiff on that day shipped on board of defendant's train of cars at that point, to be carried to Argenta, a herd of cattle. That the cattle yard where the cattle were put on board of the car was a mile east of the depot at Altus. That plaintiff by requirement of the station agent at Altus, assisted in putting his cattle on the car, which was done by himself and his half brother, Mr. J. A. Hiner, and several train men in the employ of the defendant. That plaintiff was an entire stranger, and unacquainted with any of the defendant's agents or officers at the cattle yard or depot, or with any of the rules or regulations of defendant. That after the cattle were loaded in the car, and when the train was about to run back to the depot, some one of the train men who seemed to be in charge of the matter—perhaps the engineer—told plaintiff and his half brother to get up on top of the cattle car, and they did so, and the cattle car was backed up to the depot and put in the train. After arrival at the depot, Mr. Hiner, at plaintiff's request, got down from the car and went into the office of the station agent in the depot, and asked the agent for a bill of lading for the cattle, and a pass for plaintiff. The agent, Mr. John G. Connell, stepped out upon

the platform of the depot, to within eight or ten feet of where the plaintiff was, who was still on the top of the cattle car, and in the presence and hearing of plaintiff stated that no bill of lading was necessary, and that he did not have time to give one, but for plaintiff to go through with the cattle and claim them, and that a pass for plaintiff was not necessary, that his cattle were his pass, and that he always told the conductor when a shipper of cattle was on board.

Mr. Hiner, or plaintiff then asked the agent where the plaintiff should ride, and the agent said, ' ride right where he is,' or ' right where you are.' Very shortly after this, or about that time, some one shouted "all aboard," the train moved out of the depot toward Argenta. That the conductor of the train was J. W. Buckner, who came to the train just after it was made up and ready to start. That said conductor was not acquainted with the plaintiff, and did not know that he was on the cattle car. That the train was what is called a mixed train, consisting of both passenger and freight cars, and consisted of an engine and tender, two flat cars, one box car, one cattle car, one baggage car and one coach or passenger car, and they were coupled together in the order named, *i. e.,* the cattle car was between the baggage car and the box car. That when the train reached a point a few rods east of Georgetown, a flag station, at which the train did not stop, two of the cars left the track, to-wit, the box car, and the cattle car, next behind it, on which plaintiff was riding, and the front trucks, and possibly the whole of the baggage car, left the track. Neither of the cars turned completely over, but the cattle car turned partly over, and around, so as to be nearly at right angles to the track, with the front end down in the ditch, at an angle of nearly 45°. The cattle were thrown out of the car near the front end of the car, and the plaintiff was thrown off on to the ground. The plaintiff testifies that he tried to get hold

of the bell-rope, but failed, and seized hold of the running plank, and as the car was turning over, tried to save himself by jumping or stepping off, and thought he could step off but was thrown to the ground. The conductor testified that he did not know the plaintiff, and he was not aware that he was on the train, or that he was riding on top of the cattle car, or that he was on the cattle car at any time when the train was in motion until after the accident, when he saw him on the ground. That previous to the accident, and when the train had arrived at Piney Station, which is about three miles west of the place where the accident occurred, the train stopped and four sticks of timber, dimensions six by four inches, and about thirty or thirty-two feet long, were loaded on the top of the cattle car. They were put there because they were too long to go into the box car. The cattle car was an open car on the top, i. e., there was no roof or cover to the car, but four or more courses of plank were laid down, running from front to rear, and nailed or fastened to the cross-pieces at top of the car. These were put there for the brakemen to pass from one car to another on. The timbers were designed as side-plates for box cars, and were being carried to defendant's shop in Argenta, to be used for that purpose in the manufacture of new cars. These timbers were lashed to the before-mentioned planks on the cars. The conductor was present, and superintended the loading of the timbers, and saw the plaintiff on the top of the car, but he testifies that he has no recollection of seeing him there at that time, and if he had seen him there and known that he was the shipper of the cattle, should have thought nothing of it, as it was very proper for him to be on and about the car when the train was at rest, in order to attend to his cattle; but if he had known that plaintiff had been or was intending to be on

said car when the train was running, he should have made him get down and take a seat in the passenger car, for the rules of the company, and the instructions to the agents were not to let any passenger ride on the top of cars or other exposed places. The plaintiff, Miles, testified that while putting the timbers on the car at Piney, a brakeman, or some other of the train men engaged in loading the timbers, said, 'if that man (meaning the plaintiff) would get out of the way he could load the timbers faster.' That he (Miles) then stepped back on the baggage car, while the timbers were being put on, and that was said in the presence and hearing of the conductor; but the conductor testifies that he has no recollection of hearing anything of the kind, and if he had should probably have paid no attention to it, as there was nothing in the circumstance so out of the ordinary course of things as to awaken suspicion of his riding on the car. The plaintiff further testified that he returned to his place on the top of the cattle car, and continued to ride there from the time the train left Piney until the accident occurred. That after the train left Piney he noticed that the timbers lashed to the car were so long and slipped past each other, so that they sometimes touched the car in front, and the one behind the car he was on, and the timbers so lashed to the car, so rattled about that he felt that his position was dangerous, and he determined to get down at the next stopping place and take a seat in the passenger car, even if he had to pay his passage, but the accident occurred before he reached the next station. When the accident happened the first thing that he saw was the car in front of him jumped the track, and the cattle car followed, and he was thrown off, as stated. That he knows nothing and recollects nothing that occurred after he struck the ground until after 4 o'clock that evening, when he came to his senses and found himself at the depot at Russellville. It

was further proved that the train, at the time of the accident, was running at about twelve to fifteen miles per hour, which was schedule time. That the track where the accident occurred was straight and in good order, and the cars were all in good condition, so far as any of the company's agents on the train knew or could discover at the time.

There was a slight depression at a point where two of the rails join on the side the train went off, but all the cars in the train had passed that point some rods before the accident occurred. The box car in front of the cattle car was new, and was one of a lot of fifteen cars which the defendants had some few weeks before that time purchased from the Litchfield Car Company, and were known as the Litchfield cars. It was noticed about the time of the accident that these cars sometimes jumped the track. That they left the track more frequently than other cars. That new cars are always more stiff and inflexible than old ones, and do not yield and adapt themselves to the variations of the track as readily as old ones. It was found that these cars were made so wide in the spread of the trucks as to give only one-sixteenth of an inch lateral play between the flanges on the wheels of the cars and the track or rail, and the cars were all taken to the machine shops at Argenta and the wheels pressed in, so as to give about one-half inch lateral play instead of one-sixteenth of an inch. The center bearings were also changed or raised, so as to give more play on the side bearings. These changes were made in order to make the cars more flexible, so they could adapt themselves more readily to the track in running.

It was also proved that about one-half an inch lateral play is necessary for safe running of cars, and that without it the rails will bind the wheels, and the danger of flying the track is increased; and that it is unsafe to run a car without lateral play. That if the track was in perfect condition it

would be safe to run with one-fourth of an inch lateral play, but that it was unsafe to run cars on the track of this road in the condition it was at that time, with less than one·half inch lateral play, but car builders and railroad men are not agreed as to the proper amount of play to be given to cars— some preferring and using cars with little or no play, while others prefer and use more play. After the changes in the cars were made, they gave less trouble; but without these changes they would, as all new cars do, have grown less troublesome by time and usage, and the play between the flanges and the rail or track would have increased by use. After the accident this Litchfield car was, as well as the others injured by the accident, taken to the repair shops and repaired, and the wheels were then pressed in, and the play in the center bearings increased. Whether the other Litchfield cars, or any of them, had been so changed previous to this one or not till afterwards was not known. They were not all so changed at one and the same time, but at different times. Some of these cars, perhaps, had never been run when they were changed, and the car in question was not changed on account of its leaving the track on the occasion of the accident, but in pursuance of a resolution of the superintendent of the railway, by the advice of an agent of the Litchfield car company, and that the Litchfield car company has a high reputation for the excellence of their cars, and sell a large number of freight cars. They sell to many companies in this State and others, and the cars so purchased of them by this company were and are excellent cars, so far as workmanship is concerned.

It was further proved by the conductor that the timbers put on the cattle car were green timbers, and would weigh about seventy-five pounds each, and, in his opinion, could have no effect in causing the cars to jump the track. That the top of the cattle car was a much more dangerous place to

ride than in the passenger car, and that the plaintiff would not have been injured if he had been in the passenger car. That the cattle car and box car were freight cars, and were not designed or built with the view of carrying passengers, and that the passenger car did not leave the track. It was further proved that it was a violation of the rules and instructions to all the company's agents for any one except the train hands to ride on the top of a car, or to be there when in motion. No regulation to that effect had ever been posted up or published, because it was thought not to be necessary; but regulations requiring passengers to ride in the passenger cars, and not stand or ride on the platform or exposed places, had been posted up at various times in the cars and depots, and the older parts of the road, but it was not known that any such had ever been posted up at Altus at the time of the accident, or that the same were brought to the attention of the plaintiff.

Neither the station agent, yard master or any other agents of the company, had any authority as such agent or employe to seat passengers, or to control or direct them where to ride, except the conductor of the train; but it was their duty to give correct information to the public who deal with the railroad, when applied to. It was also proved that at the terminal stations on the road the trains were under the control of the yard master, when there was one, but in the absence of the yard master, the train was under the control of the station agent from the time the train arrived in the depot until the time for it to leave again; and that at the time of the shipment of the cattle by plaintiff there was no yard master at the station at Altus.

The defendant objected at the time it was given to so much of the testimony as stated that when the cattle were loaded on the car the engineer or other agent directed plaintiff to get on the top of the cattle car, but the objection was over-

ruled and the point was saved by exception. He also objected to so much of the evidence as tended to prove that John G. Connely, the station agent at Altus, directed or gave permission to the plaintiff to ride on the top of the car in which his cattle were being conveyed, on his journey to Argenta, because the station agent did not, either as a matter of law or fact, have any authority to grant such permission; but the court overruled the objection, and an exception was taken.

This was the whole evidence except what appertained to the amount of damage to plaintiff, which is omitted, because no error on account of excessive damages is alleged.

The following eight instructions for the plaintiff were given to the jury, against the objections of defendant, and exceptions taken:

1. If the jury find from the evidence that the plaintiff was a passenger on the train of the defendant under a contract, express or implied, and whether for actual pay or as owner, shipper or freighter of cattle traveling under what is known as a drover's pass, without additional charge beyond the compensation for carrying the cattle, then he was a passenger for hire, and the defendant, undertaking to carry him, is bound to the utmost care, diligence, prudence, skill and vigilance on her part and on the part of her servants and agents.

2. If the jury find from the testimony that while the plaintiff was a passenger upon the cars or train of the defendant, and while the cars and train were under the exclusive control of defendant or her agents or servants, that the cars ran off the track or broke down, and plaintiff was injured thereby, then there is *prima facie* proof of negligence on the part of the defendant, and sufficient to charge the defendant, in the absence of explanation showing that the accident happened without fault of defendant, and the plaintiff is en-

L. R. & Ft. S. R'y. v. Miles.

titled to a verdict, unless it appears from the testimony on his part, or the defendant shows by a preponderance or sufficiency of testimony that the plaintiff's own negligence or misconduct contributed directly to and was the immediate or proximate cause of the injury received.

3. It was the duty of the defendant, as the carrier of passengers, to provide a good and suitable track, adapted to the cars to be run or operated thereon, and also to provide good and suitable cars, adapted to the track, and to so conduct and operate the same, and seat or locate passengers on and over said road so as to transport the passengers safely, as far as human foresight can provide for it, and if the jury find from the testimony that there was a defect in the track or in the machinery of the train on which the plaintiff was a passenger, or that the cars and track were not adapted to each other, and that in consequence of either of these defects the cars were broken or thrown from the track, and while the plaintiff was improperly seated or located therein without fault on his part, whereby the plaintiff was injured; or the cars were overloaded, or so improperly loaded as to cause them to be broken or thrown from the track, whereby plaintiff was injured, and that on the part of the plaintiff there was no such negligence or misconduct as contributed directly to and was the immediate or proximate cause of the injury received, then the jury will find for the plaintiff.

4. Contributory negligence is some act or omission on the part of the plaintiff tending to produce the injury complained of, and in order to bar or prevent the plaintiff from recovering, the negligence or misconduct on his part, must be the direct and proximate or immediate cause of the injury, and so nearly connected with it that the defendant, by the exercise of ordinary care and skill, could not have avoided the injury; and if the jury find from the testimony that the plaintiff was riding on the top of the car by the

direction and with the permission of defendant's agents or employes or servants, expressed or implied, who in giving such direction or permission acted in relation to their ordinary employment or in the scope of their agency, and that the plaintiff was injured because of an accident to the train while thus riding, and because of his being on top of the car, without other fault or negligence on his part, then his conduct did not amount to contributory negligence, and he is entitled to recover.

6.  If the jury find from the testimony that the plaintiff was riding upon the top of the car by the direction of or with the consent of the agents or employes of defendant, who in giving said direction or consent acted in the due course of their employment, although such action of the agent or employe is against the rules of the defendant, and such rules had not been made known to plaintiff, he is not guilty of contributory negligence and is entitled to recover.

7.  If the jury find from the testimony that the accident to the train which occasioned the injury complained of was in no way caused by the plaintiff's agency, but that said accident was caused solely by defects in the machinery of the cars, or by defective road bed or track, or by any negligence of defendant or her employes, and that the plaintiff did not contribute directly or proximately by his own negligence or want of ordinary care and caution to the injury received by him, they will find for the plaintiff.

8.  The jury are the judges of the credibility of the witnesses, and of the weight and sufficiency of the testimony, and if they find the weight or preponderance of testimony in favor of the plaintiff, they will find in his favor, and for such amount of damages as the testimony may warrant, and and in assessing the damages they may consider not only the damage suffered by the plaintiff from the time of the injury up to the commencement of this suit, but also all the dama-

ges proceeding continuously from the injury up to this time, and which it is reasonably certain from the testimony that he will suffer in the future, including a fair compensation for any physical and mental sufferings he has already suffered, caused by the injury, and any permanent reduction of his power to earn money or pursue his ordinary vocation or business.

On the part of defendant the following instructions, numbered from one to sixteen, inclusive, were demanded, to-wit:

1. That this is an action for the recovery of damages for injuries received by plaintiff whilst a passenger on defendant's train from Altus to Argenta.

2. That the main issue involved, and upon which the plaintiff's right to recover must ultimately turn, is whether the injuries complained of were attributable to his own negligence, misconduct, or fool-hardiness as it is sometimes expressed in the law books.

3. The question of contributory negligence is one of mixed law and fact, and in passing upon it the jury are bound by their oaths and the law of the land to take the law as given them by the Court, and not to decide it according to their notions of what the law ought to be.

4. That the law requires of all common carriers of persons everything necessary to their security reasonably consistent with the business of the carrier and appropriate to the means of conveyance employed by him to be provided, and that the highest degree of practical care, diligence and skill shall be adopted that is consistent with the mode of transportation used; and to this extent the law requires the rule to be rigorously enforced, as a protection to the traveler and as a warning to the carrier against the consequences, negligence, and delinquency in his duty.

5. But while this stringent rule is rigorously enforced against the carrier, there are still certain risks which are in-

curred by the passenger, and for which the carrier is not responsible. These are the casualties which human sagacity can not foresee, and against which the utmost prudence can not guard, and every passenger must make up his mind to meet the risks incident to the mode of travel he adopts, which can not be avoided by the utmost degree of care and skill in the preparation and management of the means of conveyance; and to submit to the privations and restraints and observe and conform to the provisions made and enforced for his safety and protection.

6. That where one by his own folly, fault or negligence has brought upon himself an injury, he can claim no compensation for it from another, is a principle of universal application; and it is equally true that if his imprudence or negligence has so materially contributed to the injury that but for such imprudence or negligence it would not have occurred, he can claim no recompense from another, who has been instrumental in causing it, unless the latter, upon the discovery of the danger into which the party had placed himself by his own fault or folly, could, by the use of due diligence, have prevented or avoided the occurrence.

7. The Court further instructs that it is negligence as matter of law for a passenger to climb on the top of a freight car and ride in that position, when there was a car in the same train provided expressly for passengers, in which he was at liberty to ride. And if the jury believed the plaintiff was in such position when he was injured, and would not have been injured if he had been in passenger car, then his carelessness in riding in the position was the cause of his injury, and he can not recover, notwithstanding, the jury may find that the accident by which the plaintiff was injured was caused by the carelessness of the company's agents.

8. To entitle the plaintiff to recover in this action it must be proved that his injury was caused by the negligence

of the company's agents towards him as a passenger; that if in the train upon which he was injured there was a car or cars provided for passengers, and other cars provided for stock or other freight, the undertaking of the company is as common carrier of passengers in the passenger car or cars, and of cattle or other freight in the car provided for freight, and the company does not undertake to be responsible for the extra hazard of passengers being or riding upon the cattle or other freight cars, and if the plaintiff was injured while so riding, or being upon a freight car, and he would not have been injured by or through the same cause or causes if he had been in the passenger car or cars, then his injury was occasioned by such extra hazard, and he cannot recover.

9.  If the jury believe that the plaintiff, Miles, went upon said train or cars at the time mentioned in his complaint, with the view of becoming a passenger, and was then of mature age and ordinary intelligence, and also believe from the evidence that there was in said train a car provided for passengers, then the law conclusively presumes that the plaintiff knew that it was his duty to apply for a seat in said car, and cannot be permitted to set up ignorance of such duty.

10.  That the custom of shippers of stock to ride in or upon the cars in which their stock is being conveyed, if any such custom has been proven in this case—which is a question for the jury—such custom does not affect the liability of the company to such person being injured while in that position. If such a shipper rides in or upon the cattle car when there is a passenger car provided for all passengers, he assumes the extra risk, if any, of one riding in such a position, and cannot recover, notwithstanding such custom.

11.  Notwithstanding the jury may believe that the

plaintiff was not negligent in riding upon top of said freight car, they cannot find a verdict against defendant upon the absence of such negligence alone. Negligence on the part of the company as the cause of the injury must be fully proved, and if the jury believe from the evidence that the accident which occasioned the injury was the result of a defect in one or more cars in the train, nevertheless, if they believe from the evidence that the company had no knowledge at that time of such defect, and could not, by the utmost care and diligence, before the time, have discovered any such defects, then the verdict must be for defendant.

12. Notwithstanding the jury may find from the evidence that one or more cars in the train were defective, if they further find from the evidence, that such defect did not cause the accident which occasioned the injury, then such defective car or cars cannot be imputed as a ground of negligence, and the jury must disregard such evidence of defective cars in making up their verdict.

13. That the custom of shippers of cattle to go or send an agent along to care for and attend to the cattle, does not impose upon the company liability for the extra hazard, if any, which attends them in riding upon the cattle cars. As to such persons the company assumes the same liability only which she is under to all passengers, and if the jury believe from the evidence that the plaintiff was on top of the cattle car when he is said to have been injured, then the law in relation thereto is the same as if he were in that position without being a shipper of cattle on the train.

14. The jury are instructed that there is no evidence in the case to sustain a verdict for the plaintiff, and the jury are directed to bring in a verdict for the defendant.

15. That if you believe from the evidence that no leave was in fact given to plaintiff by the local agent at Altus, to

remain and continue to ride on the cattle car, and that the conductor was not aware of his being a passenger on the train, or of his riding on the cattle car until after he received the injury complained of, you should find for the defendant.

16. That if you find that there is a conflict of testimony as to whether the plaintiff had such leave from the local agent, or as to the conductor's knowledge of plaintiff's riding on top of the car, it is your peculiar and sole province and duty to pass upon the question of credibility of the witnesses whose testimony is conflicting, and in doing so it is your duty to take into consideration their several and respective interestedness and disinterestedness in the result, and the relations they sustain to the parties, and in case you find it impossible to reconcile their testimony so as to accept them all as true, and that they stand equal in every other respect, you should give credit to those who are wholly disinterested in preference to one who is interested. In other words, the Court instructs you that when there is a conflict in the testimony of witnesses those who are creditable and entirely disinterested are entitled to more credit than those who are interested.

These instructions the Court gave to the jury, except the seventh, eighth, ninth, tenth, thirteenth and fourteenth, which the Court refused, and exceptions were signed. The Court then modified and altered the seventh, eighth and thirteenth of defendant's instructions, and as so modified and altered, gave them to the jury, and exceptions to the same by defendant were duly signed.

The seventh instruction was modified and changed only by inserting the word *"voluntarily,"* after the word "passenger," in the second line.

The eighth instruction was modified only by inserting after the word car or "cars," the words *"unless otherwise impliedly or expressly agreed."*

The thirteenth was modified by inserting after the word "cars," *without instructions or consent of duly authorized agents.*

The Court then, of its own accord, gave the following instruction to the jury, to which an exception by the defendant was duly signed, to-wit; "That the question as to whether the conductor, station agent or other officer or employee of the company had authority to permit the plaintiff to ride on the cattle car, is a question for the jury, and if the said agents, or any of them, had such authority, then if such agents gave such permission, or knew that the plaintiff was riding on said car, and did not direct him to take a seat in the passenger car, then it was not contributory negligence for him to ride there, and the jury must find for the plaintiff, if they further find that the accident which occasioned the injury was caused by the negligence of the defendant's agents.

The following points were, at the instance of defendant, submitted for the jury to find upon, specially, under the statute :

1. Did plaintiff, after returning from the stock yard on the cattle car to the depot at Altus, voluntarily and of his own accord remain upon it until he received the injuries complained of near Georgetown, twenty or thirty miles distant from Altus?

2. Was there a passenger car attached to the train in which he was at liberty to ride with the rest of the passengers, if he had chosen to do so?

3. If he had taken passage in the passenger car, and remained there except when called upon to look after his cattle, would he have escaped the injuries occasioned by the accident to the cattle car on which he was riding at the time?

4. Were the injuries received attributed to plaintiff's

voluntarily taking passage on top of the cattle car, instead of in the passenger car?

5. Did plaintiff's neglect to avail himself of his right to ride in the car provided for passengers, contribute to the injuries he received?

6. Was plaintiff riding on the cattle car at the time of the accident by the permission, direction or authority of the conductor?

7. If in your general verdict you find for plaintiff, state whether or not you find from the evidence that plaintiff was riding upon the cattle car at the time of the accident by or with the assent, permission, direction or authority of defendant's agent, state whether such assent, permission, direction or authority was that of the agent in charge of the depot or of the conductor in charge of the train.

The jury found a general verdict for plaintiff, and assessed damages at $4,000.

To the first special interrogatory they answer, "*No,*"

To the second they answer: "*There was; but the agent instructed him to ride upon the top of the cattle car.*"

To the third they answered: "*Yes.*"

To the fourth they answered: "*No.*"

To the fifth they answered: "*He rode as agent directed.*"

To the sixth they answered: "*No; but by direction of the agent at depot.*"

To the seventh they answered: "*The jury believe that plaintiff was riding on the cattle car by the direction and authority of defendant's agent at the depot.*"

The court overruled a motion to disregard the general verdict, and give judgment for the defendant on the special findings under the statute.

A motion for new trial was overruled, and defendant excepted.

The grounds for new trial were:

1.   Because the verdict of the jury was contrary to and not sustained by sufficient evidence.

2.   Because the verdict was contrary to law and the instructions of the court.

3.   Because the court erred in admitting, against the objections of the defendant, the testimony of R. W. Miles, the plaintiff, and one J. A. Hiner, to the effect that John G. Connelly, employe and station agent of the defendant, directed or gave the plaintiff permission to ride on the top of the car in which his cattle were loaded, on his journey to Little Rock.

4.   Because the court erred in giving the jury the first, second, third, fourth and sixth, seventh and eighth instructions asked for by plaintiff.

5.   Because the court erred in refusing to give to the jury instructions numbered seven, eight, nine, ten, thirteen and fourteen, prayed for by defendant, and in modifying and giving to the jury so modified and altered, the seventh, eigth and thirteenth of said instructions, and in giving to the jury the instruction which the court gave upon his own motion and at his own instance.

## OPINION.

1. RAIL-
ROAD.
    Traveler
on drovers
pass.
    Rights
and liabili-
ties.

The plaintiff was a passenger for hire, notwithstanding he traveled upon a drover's pass. He had the same rights and was under the same obligation to conform to the reasonable rules and regulations of the company as if he had bought his ticket. *Railroad Co. v. Lockwood*, 17 *Wall*, 357; *C. P. & A. R. R. Co. v. Curran*, 19 *Ohio st.*, 1; *O. & M. R'y. Co. v. Selby*, 47 *Ind.*, 471; *Maslin v. B. & O. R. Co.*, 14 *W. Va.*, 180; *Blair v. Erie R'y. Co.*, 66 *N. Y.*, 313.

2. Negli-
gence, ex-
tent of lia-
bility for.

Carriers of passengers by the powerful and dangerous agency of steam are held to the highest degree of care and are responsible for the smallest negligence. *P. & R. R'y. Co. v. Derby*, 14 *Howard*, 486; *Steamboat New World v.*

*King,* 16 *Id.,* 474; *Taylor v. Grand Trunk R'y. Co.,* 48 *N. H.,* 329; *S. W. & W. R. R. Co. v. Boddely,* 54 *Ill.,* 19.

The fact that the cars left the track is *prima facie* proof of negligence on the part of defendant. *Feitall v. Middlesex R. Co.,* 109 *Mass.,* 720, and cases cited.

<span style="float:right">3. Cars leaving track is evidence of negligence.</span>

Yet the absence of reasonable care and caution on the part of an adult plaintiff will prevent a recovery. It is the duty of a passenger upon a railway to inform himself of the company's regulations for running its trains. *Pittsburgh, C. & St. L. R'y. Co. v. Nusum,* 50 *Ind.,* 141; *Southern R. Co. v. Kendrick,* 40 *Miss.,* 375, *and cases and authorities there cited; Penn. R. Co. v. Langdon,* 92 *Penn. st.,* 21; *Cheney v. Boston & Maine R. Co.,* 11 *Met.,* 121.

<span style="float:right">4. Duty of passengers. Contributory negligence.</span>

Another duty is to occupy a seat inside of the car provided for passengers when a seat is to be had. The conductor is charged with the administration of these rules and doubtless if the passenger rides in an improper place, for example, in the baggage, express or postal car, or in a caboose attached to the train or on the platform, by the conductor's permission, or with his acquiescence, this would exempt the passenger from blame, and in case of accident to him resulting from the company's negligence, he might recover damages. *O'Donnell v. Alleghany Valley R. Co.,* 59 *Penn. st.,* 239; *Carroll v. N. Y. R. Co.,* 1 *Duer,* 571; *Dunn v. Grand Trunk R'y.,* 58 *Me.,* 187; *Jacobs v. St. Paul & R'y. Co.,* 20 *Minn.,* 125; *Creed v. Penn. R. Co.,* 86 *Penn. st.,* 139. *Washburn v. Nashville & C. R. Co.,* 3 *Head.,* 638.

In *Indianapolis R. Co. v. Horst,* 93 *U. S.,* 291, the facts were these: The plaintiff a drover, in charge of cattle upon a train, was directed by the conductor to get out of the caboose and get on top of the train, as the caboose was to be detached and another caboose was to be attached at some distance further up the road. The train was at rest and the

21

plaintiff did as he was told.  By a violent jerking and back-ing of the train, the plaintiff was thrown down between the ends of two cars and received injuries for which he recover-ed a verdict for $8,000.  And the judgment was affirmed upon the ground that, although the top of a freight car in the night was a perilous position, yet the drover, when com-manded to go there, had no choice but to obey, or leave his cattle to go forward without any one to accompany and take care of them.

But there are certain portions of every railroad train which are so obviously dangerous for a passenger to occupy and so plainly not designed for his reception that his presence there will constitute negligence as a matter of law and preclude him from claiming damages for injuries received while in such position.  A passenger who voluntarily and unneces-sarily rides upon the engine or the tender, or upon the pilot or bumper of the locomotive, or upon the top of a car, or upon the platform, cannot be said to be in the exercise of that caution and discretion which the law requires of all per-sons who are of full age, of sound mind and of ordinary in-telligence.  *Railroad Co. v. Jones*, 95 *U. S.* 439; *Doggett v. Illinois, &c., R. Co.*, 34 *Iowa*, 284; *Robertson v. N. Y. R. Co.*, 22 *Barb.*, 91; *Downey v. Hendric*, 46 *Mich.*, 498; *Spoonor v. Brooklyn City R. Co.*, 36 *Barb.*, 217; *Camden & Atlantic R. Co. v. Hoosey, Supreme Court of Penn.*, *Feb'y.* 20, 1882, *reported in* 7 *Railway Age*, 481, *and to be reported probably in* 99 *Pa. st.*

The test of contributory negligence is:  Did that negligence contribute in any degree to produce the injury complained of?  The jury found that a passenger car was attached to the train, in which plaintiff was at liberty, if he had chosen, to ride, and that he would not have been injured if he had ta-ken a seat in it.  This is conclusive against the right of re-

*Test of contribu-tory negli-gence.*

covery, unless the directions of the station agent for him to ride on the cattle car alters the case.

In *Lygo v. Newbold*, 9 *Exch.*, 302, the plaintiff contracted with the defendant to carry certain goods for her in his cart. The defendant sent his servant, who, without the defendant's authority, permitted the plaintiff to ride in the cart. On the way the cart broke down and the plaintiff was injured. It was held that the defendant was not liable. That case is distinguishable from the case under consideration in two points: the defendant was not a common carrier and he had never contracted with the plaintiff to carry her. *[margin: Station agent. His authority.]*

In *Eaton v. Delaware, etc., R. Co.*, 57 *N. Y.*, 382, the conductor of a coal train had invited a person to ride on the train contrary to the regulations and he was injured through the negligence of the defendant's employes. The Court reversed a judgment for the plaintiff, holding that the conductor had no power to take the plaintiff upon the train in such way as to bind the defendant, because it was outside the scope of his agency.

To the same effect is *Robertson v. N. Y. & Erie R. Co.*, 22 *Barb.*, 91, where an engineer had permitted a person to ride upon his engine, and he was badly injured while riding in that position.

Both of the cases last cited hold that, as there is no presumption of law in favor of the right of a person to ride in an unusual or perilous place upon a train, the onus is upon him to prove that the agent had authority from the company to grant him permission to ride there.

The rule is firmly established that the master is civilly liable for the tortious acts of his servant whether of omission or commission, and whether negligent, fraudulent or deceitful, when done in the line of his employment, even though the master did not authorize, or know of such acts, or may have disapproved of or forbidden them. *Wharton* *[margin: Liability of master for acts of servant.]*

*on Negligence, sec.* 157 *et seq.* But the act must be done not only while the servant is engaged in his master's service, but it must pertain to the particular duties of that employment.

A reference to a few adjudged cases will make plain the qualification of the rule.

In *Wilton v. Middlesex R. Co.,* 107 *Mass.,* 108, the plaintiff, a girl nine years old, was walking in company with several other girls upon the Charleston bridge about 7 P. M., when one of the defendant's horse-cars came along very slowly and the driver beckoned to the girls to get on. They got on the front platform, and the driver struck his horses, which made them suddenly start, whereby plaintiff lost her balance and fell, one of the wheels passing over her arm. It was admitted the plaintiff was not a passenger for hire, and the driver had no authority to carry her unless such authority was implied from his employment. The Court said: "The driver of a horse-car is an agent of the corporation having charge in part of the car. If, in violation of his instructions, he permits persons to ride without pay, he is guilty of a breach of his duty as a servant. Such act is not one outside of his duties, but is within the general scope of his agency, for which he is responsible to his master. The invitation to the plaintiff to ride was an act within the general scope of the driver's employment and if she accepted it innocently, she was not a trespasser. It is immaterial that the driver was acting contrary to his instructions."

In *Flower v. Penn. R. Co.,* 69 *Pa. St.,* 210, an engine with the tender and one freight car had been detached from a train and was stopped at a water station. The fireman requested a small boy standing near to put in the hose and turn on the water. While he was climbing on the tender to do this the other freight cars belonging to the train came down without a breakman, and struck the car behind the tender. The boy fell and was crushed to death. The

Court held that the company owed no special duty to the boy, saying: "The case turns wholly on the effect of the request of the fireman, who was temporary engineer. Did that request involve the company in the consequences? The fireman, through his indolence or haste, was the cause of the boy's loss of life. Unless his act can be legally attributed to the company, it is equally clear the company was not the cause of the injury. The maxim *qui facit per alium facit per se*, can only apply where there is authority, either general or special. It is not pretended that there was a special authority. Was there a general authority which would comprehend the fireman's request to the boy to fill the engine tank with water? This seems to be equally plain without resorting to the evidence given that engineers are not permitted to receive any one on the engine but the conductor and fireman or superintendant; that it is the duty of the fireman to supply the engine with water; that he has no power to invite others to do it, and can leave his post only on a necessity. * * * It is not like the case of one injured while on board a train by the sufferance of the conductor, whose general authority extends to receiving and discharging persons to and from the train."

In *Snyder v. Han. & St. Joe R. Co.*, 60 *Mo.*, 413, a parent claimed damages for injuries received by an infant child while attempting to get upon one of defendant's cars. The petition alleged an invitation from the defendant's servant in charge of the car to the child, but showed no authority in the servant to permit persons to ride on the car, and no connection between such invitation and the service which the servant was employed to render. And the petition was held to be fatally defective.

An agent cannot increase his powers by his own act. They must always be included in the acts or conduct of his principal. *Marvin v. Wilber*, 52 *N. Y.*, 270. And a prin-

cipal is not liable for acts of the agent beyond the sphere of his duty. The employment of an agent for a particular purpose gives only the authority necessary for that agency under ordinary circumstances, or the authority usually exercised by similar agents. *Cox v. Railway Co.*, 3 *Exch.*, 268.

Station agent has no authority to assign seats to passengers.

Now it is not incident to the employment of a station agent to assign seats to passengers upon a train. That is the business of the conductor. It is not within the apparent scope of the powers of a station agent His duties and the nature of his office do not call for any intendment that he is authorized to give directions on this subject which will bind the company. *Tucker v. St. Louis, etc., R'y. Co.*, 54 *Mo.*, 177; *A. & P. R. Co. v. Reisner*, 18 *Kan.*, 458; *Cooper v. N. Y. C. & H. R. R. Co.*, 6 *Hun.*, 276; *Stephenson v. N. Y. & H. R. Co.*, 2 *Duer.*, 341.

There is no evidence in the record that he had any such authority as a fact. And the law will not imply it.

6. PRACTICE: General and special verdict.

All that is left in this case is a question of practice, where the jury return into court special findings of facts which are inconsistent with their general verdict. The statutory provisions upon this subject are as follows:

"A special verdict is that by which the jury find the facts only. It must present the facts as established by the evidence, and not the evidence to prove them, and they must be so presented as that nothing remains to the Court but to draw from them conclusions of law.

"In all actions the jury, in their discretion, may render a general or special verdict, but may be required by the Court in any case in which they render a general verdict, to find specially upon particular questions of fact to be stated in writing. This special finding is to be recorded with the verdict.

"When the special finding of facts is inconsistent with

the general verdict, the former controls the latter, and the Court may give judgment accordingly.

"When the facts in a special verdict are insufficiently found, the Supreme Court may remand the cause and order another trial to ascertain the facts." *Gantt's Digest, Sections* 4678, 80, 1106.

On the trial special issues were submitted to the jury, and in addition to the general verdict for the plaintiff, findings upon these issues were returned into court. The jury found that the plaintiff was riding on top of the cattle car when he was injured; that he rode there by the instruction of the station agent at Altus, and by no other authority; that a passenger car was attached to the train, on which he was at liberty to ride; and that if he had taken passage in it, and had remained there except when called upon to look after his cattle, he would have escaped injury.

Upon the special findings the defendant moved the Court for judgment, notwithstanding the general verdict, which was in favor of the plaintiff, but the motion was overruled. It should have been granted. The special verdict expresses the ultimate facts of the case, and is conclusive upon both parties. The two verdicts being inconsistent, the special verdict controls and displaces the general verdict. *Leese v. Clark,* 20 *Cal.,* 387; *Thompson v. C. S. & C. R. Co.,* 54 *Ind.,* 197; *Hall v. Harlow, Sup. Ct. of Indiana, dicided October,* 1879; *Lemke v. C. M. & St. P. R'y. Co.,* 39 *Wis.,* 449; *Davis v. Town of Farmington,* 42 *Wis.,* 425; *Brown v. Ferguson,* 4 *Leigh.* 37.

The judgment must therefore be reversed, and the Court below directed to enter judgment for the defendant upon the special findings.