ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* STEWART.

Opinion delivered February 16, 1901.

1. NEGLIGENCE—SPEED OF TRAIN.—Running a train at night at the rate of sixty miles an hour, a rate of speed largely in excess of schedule time, over a crooked track, where the headlight shines only one hundred feet ahead, is such negligence as will make the carrier liable for the injuries of a passenger resulting from derailment of the train caused by striking a cow. (Page 608.)

2. EVIDENCE—LAW OF FOREIGN STATES.—Where, in an action to recover for a *tort committed in another state*, the statute law of that state is proved, it is not admissible to prove by oral testimony what was the construction placed upon such statute by the supreme court of that state. (Page 611.)

3. SAME—WHEN NOT PREJUDICIAL.—In an action by a passenger to recover damages for injuries received in a train wreck, proof that the railway company settled with another passenger likewise injured in the same wreck is incompetent, but not prejudicial, if the company's negligence was otherwise established. (Page 611.)

Appeal from Nevada Circuit Court.

JOEL D. CONWAY, Judge.

*Dodge & Johnson*, for appellants.

The injury resulted from unavoidable accident, unmixed with negligence. Being a Missouri case, the right to recover is ruled by the Missouri doctrines. 54 S. W. 865; 178 Ill. 132. The injury must be the result of negligence in failing to exercise reasonable care and foresight as to appliances, servants, etc. 102 Mo. 451; 108 Mo. 249; 133 Mo. 6; 118 Mo. 199; 127 Mo. 197; 83 Mo. 608; 102 Mo. 438; 76 Mo. App. 606; 57 Mo. App. 332; Story, Bailm. § 601; Sh. & Redf. Neg. § 405; Whart. Neg. §§ 634–5; Hutch. Carr. § 502; Rorer, Railroads, 955; 42 Fed. 37; 130 Mo. 139; 76 Mo. 283; 106 Mo. 482; 37 Mo. 240; 88 Mo. 50. It was error to refuse defendant's fifth instruction. 160 Mass. 403; 18 N. Y. 408; 85 Me. 34.

*Scott & Jones*, for appellee.

BUNN, C. J. The appellee, Henry H. Stewart, was in the employ of the United States government as a postal clerk, and in the performance of his duties as such was a passenger in the mail coach of defendant's passenger train, on the 5th of February, 1898, going north from Texarkana to St. Louis; and when the train reached the little town of Hematite, about thirty-five or forty miles south of St. Louis, the train was wrecked; and the appellee was injured by receiving a cut an inch long and to the bone on the left side of the head and a contusion on the left thigh, wherefrom he suffered from nervous shock, and was unable to perform his customary duties for

twenty or thirty days, thus losing $100, and paid out for medical attendance $13, and some other small amounts.

The circumstances of the wreck were substantially as follows, viz: The train was running at the rate of fifty or sixty miles an hour, greatly in excess of the schedule time, which was thirty-three miles an hour, it being some minutes behind time, and the trainmen in charge were endeavoring to make up the time. It was about 6 o'clock a. m., which was at that season of the year dark. For the distance of a thousand or twelve hundred feet before reaching the street or public crossing at Hematite, there were curves in the railroad track forming the letter "S" —that is, two curves—and the track was in a cut from six to eight feet deep, about six feet deep towards the highway crossing and up to it. The engine struck a passing cow on the highway, and was thus thrown from the track, as were the tender and several of the coaches following, among them the mail coach in which the appellee was traveling, and was at his usual work at the time. The mail coach was turned over on its side, and the appellee was thus injured. It is in evidence that one occupying the engineer's place could see a cow only a short distance ahead, owing to the curves and the depth of the cut. It was also shown that in the night time, when the headlight had to be depended on, on account of the curvature of the road bed, and the consequent diversion of the rays of the headlight, from the track, a cow could not be seen further than one hundred feet in front of the engine.

The railroad bed, the cattle guards on either side of the highway and the wire fences leading therefrom, and the train, with its running gear and appliances, were all in perfect condition. Both the engineer and fireman were instantly killed. The statutes of Missouri regarding cattle guards and track fencing, as affects this case, are not materially different from the laws of this state.

The main question in the case is, were the employees of defendant guilty of negligence in operating the train at the time of the injury complained of? All the statutory signals had been given, and the stock signals required by the regulations of the company had also been given. But was all this suffi-

cient under the circumstances of this case? There was no apparent necessity to keep a watchman or guard at this crossing. Hematite is but a very small village, and it may be admitted, for the sake of the argument, that the crossing was little different from such a crossing in the country. But this immunity from keeping a watch at the crossing does not relieve railroad companies from the exercise of such care as it reasonably can use to prevent occurrences such as this one is shown to have been. Therefore there was no necessity for an instruction on the subject of gates and watchmen. It was shown that both the engineer and firemen were experienced in their stations, and the engineer especially was regarded as one of the finest engineers on the road. Both were acquainted with this part and all parts of the road, as they had been employed for sometime in running on these trains. Was it prudent or in the exercise of due care for this engineer, with his knowledge of the surroundings, to run his train at this particular point at the rate of fifty or sixty miles per hour, when only required by the schedule to run thirty-three miles per hour? The necessity of making up lost time is never so great as that of preserving human life, and even when the making up lost time approaches necessity itself, the necessary increase of speed should be on parts of a road where a strict lookout will be reasonably effective in preventing injuries, or at least the probability of injury, to persons and property.

From the evidence, the portion of the track involved was peculiarly trying to trainmen, and some things which would have greatly aided them in the successful running of the train on other portions of the track were absent at this place—a straight track and perfectly level grade, or grade that would insure a quicker stoppage of the train than on a down grade as this was. It appears to us, as it evidently did to the jury, that, without having to resort to anything that would have rendered the service of the road to the public less effective or to the company less remunerative, a far less rate of speed would have been the proper thing in this instance. At the time of the collision the train was running at a rate of nearly a mile a minute. To run the hundred feet, which was the greatest dis-

tance the engineer could have observed the cow, required little more than a second of time.   A strict lookout, as required by law, and the application of the most effective means known to slow up or stop the train, could not possibly avail anything. No effective alarm could have been given in that moment of time.   These things should have been taken into account by the engineer.

On the subject of the degree of care necessary under such circumstances, the court gave, at the instance of the plaintiff, instruction number 6, and, at the instance of the defendant, instructions number 8 and 12, which, taken together or even separately, fairly define what is the law applicable, as held by this court in all its decisions on the subject.   *Little Rock & F. S. Ry. Co.* v. *Miles*, 40 Ark. 298; *Eureka Springs Railway* v. *Timmons*, 51 Ark. 459; *Railway Co.* v. *Sweet*, 57 Ark. 287; *Railway Co.* v. *Sweet*, 60 Ark. 550; *George* v. *St. L. I. M. & So. Ry. Co.* 34 Ark. 613.   These instructions in their order are as follows:

To the plaintiff, No. 6:   "Railroad companies, in the carriage of passengers, are required to use the utmost care and foresight, and are held responsible for the slightest negligence. The first and most important duty incumbent on them is to provide for the safety of their passengers.   To this end they are required to provide all things necessary to their security, reasonably consistent with their business, and appropriate to the means of conveyance employed by them, and to exercise the highest degree of practicable care, diligence and skill in the operation of their trains."

To the defendant, No. 8:   "The court instructs the jury that, while the law demands the utmost care for the safety of passengers, it does not require railroad companies to exercise all the care, skill and diligence of which the human mind can conceive, nor such as will free the transportation of passengers from all possible perils.   The plaintiff in this case necessarily took upon himself all the usual and ordinary perils of travel; and if they find from the evidence that defendant had exercised all the care, skill and diligence required by law, as defined in these instructions, and that nevertheless the accident

occurred, the defendant would not be responsible therefor, and your verdict should be for defendant." And

No. 12: "The care required by railroad carriers has been defined to be the highest practicable care which capable and faithful railroad men would exercise in similar circumstances."

It was objected by the defendant that, having proved what was the statute law of Missouri on the subject of cattle guards and fencing and the liability and immunity therein declared, the court refused to permit the witness Ewing to testify as to the construction put upon said statute by the supreme court of that state. We see no error in this refusal. The best evidence of what the supreme court of Missouri has said on the subject is the report of its decisions, which are easily accessible, even admitting this is a matter of proof at all.

In the course of the examination of witnesses, one witness who, we infer, had been injured in the same wreck, or claimed to have been, was asked if the railroad had settled with him, to which he answered in the affirmative. To the asking of and the answer to their question, the defendant objected, but the court overruled its objection. There was error in this, but in view of the particular point at issue and the proof sustaining the plaintiff's contention—negligence—and for other reasons, the error is not a reversible error.

There is some question as to the amount of damages. Further than the loss of wages by the loss of time, the medical bill, etc., this court has no certain evidence in the case. Pain or suffering, as elements of damage, are uncertain quantities, both for the jury and the court. We will not disturb the verdict in this particular case.

Affirmed.