ST. LOUIS, IRON·MOUNTAIN & SOUTHERN RAILWAY CO. v. HIGGINS.

Decided October 25, 1890.

1. *Railway accident—Injury to employe—Contributory negligence—Emergency.*

In an action by an employe against a railway for personal injuries received while in the discharge of his duties, occasioned by defendant's negligence, the jury may, in determining plaintiff's contributory negligence, consider whether the service he undertook to perform was required by a superior to be done with rapidity and promptness in an emergency which demanded his exclusive attention.

2. *Improper testimony—Verdict of former jury.*

A verdict will not be set aside because the verdict of a former jury was delivered to the jury endorsed on the complaint, unless it was done fraudulently or designedly with intent to influence them.

APPEAL from *Lafayette* Circuit Court.

C. E. MITCHEL, Judge.

*Dodge & Johnson* for appellant.

This case was reversed upon substantially the same facts in 44 Ark., 293.

1. There is no evidence of negligence, either directly or· remotely, on the part of appellant; but the injury was shown, clearly to have been the result of carelessness and neglect on part of the appellee contributing directly to the injury. Defendant's liability did not depend upon the fact that the platform of the caboose sagged a little; but upon the fact whether or not in its then condition it ought to have been used about the work in which plaintiff was engaged. 35 Ark., 615; 44. Ark., 300. *Plaintiff knew of the defect*, and attempted to make the coupling, and cannot recover. A railroad is not bound to use *only* the *best* implements, machinery and methods. 45 Mich., 212. Nor is it bound to discard old cars, or of an old style, because coupling them is attended with increased danger. 33 Mich., 102; 77 Ill., 365; 88 Ill., 112. The law only requires its appliances to be reason-· ably safe for the uses they are put to. 12 A. & E. R. R. Cas., 214; 35 Ark., 615; 21 A. & E. R. R. Cas., 634; 21 A. & E. R. R. Cas., 642-3.

Plaintiff knew of the defects, and the injury occurred from· his own carelessness. 31 A. & E. R. R. Cas., 197. He· alone is to blame. 53 Mich., 212; 18 N. W. Rep., 787; 122 U. S., 194; 29 Conn., 548. The increased risk from cars of different heights or make is one assumed by an em-· ploye. 18 Fed. Rep., 282; 23 N. W. Rep., 890; 7 Pac. Rep., 204; 8 Pac. Rep., 411; 2 Atl. Rep., 355; 34 Fed. Rep., 102; 45 Mich., 212; 7 N. W. Rep., 794; 31 N. W. Rep., 46; 33 Mich., 134; 122 U. S., 195; 109 U. S.,. 482; 67 Mo., 300; 11 S. W. Rep., 699; 51 Ark., 467.

Upon the facts alone the case should be reversed. 21 Pac. Rep., 562; 21 Pac. Rep., 574; 21 N. E. Rep., 402; 83 Va., 640; 3 S. E. Rep., 145 and notes.

2. In view of the facts and the authorities cited above, it was error to refuse to give instructions two and three asked by appellant. They were approved when this case was here before. The refusal of the court to give number·

four as asked was error, and was not cured by giving them in the form as modified. 46 Ark., 569. The fifth prayer was asked upon the authority of 35 Ark., 615, and 44 Ark., 300.

For the same reasons the court erred in giving the third, fourth and sixth for plaintiff. The third is misleading, and the facts did not justify it. Number four instructed the jury that defendant was an insurer of the lives of its employes, and number six made defendant liable simply upon notice of the defect, wholly disregarding the fact that plaintiff knew of it and waived it, or assumed the risk by continuing to work. See cases *supra*.

3. Improper evidence was allowed to go to the jury in the nature of the former verdict, to the defendant's manifest injury. 16 Pet., 166, 147; 16 Ark., 590; 4 Johns., 487; 29 Johns., 293; 35 Johns., 109; 60 N. Y., 648; 5 Col., 276; 11 S. W. Rep., 766; 11 Iowa, 62; 1 Allen, 455; 5 Mass., 403; 19 N. H., 148; 7 Geo., 294; 6 N. H., 360-1; Hayne, New Tr., sec. 68; Proffat, Jury Trial, secs. 390-2; 5 Pick., 297; Coke's Litt., 227 *b*; 2 Hale's P. C., 308; Cro. Eliz., 189; 8 Barb., 47; 3 Foster (N. H.), 497; 19 Ill., 480; 30 N. W. Rep., 682; 25 Ga., 494; 4 Yerg., 111; 6 Humph., 275; 57 Me., 493; 1 Brev., 16; 18 B. Mon., 291; 32 N. W. Rep., 246.

4. The verdict is excessive.

*T. E. Webber*, *Montgomery & Hamby* and *Atkinson & Tompkins* for appellee.

1. This case was not tried virtually upon the same evidence as set out in 44 Ark., 298. The testimony of the conductor is contradicted by the plaintiff and brakeman.

A master owes it to his employe to provide suitable appliances, track and *sound* and *sufficient* cars to do their work. 44 Ark., 298. The testimony shows that plaintiff was young and inexperienced; that he did not know of the increased danger, and was not warned.

It was negligence, if defendant placed plaintiff in a perilous situation which he did not comprehend, without explaining its dangers, and plaintiff cannot be held to have assumed the risks and hazards of which he was not informed, and which he could not understand by reason of his inexperience.   13 S. W. Rep., 801; 3 Fost. & F., 622; 3 Am. Rep., 506; 120 Mass., 427; 113 Mass., 399; 25 Am. L. Rev., N. S., 580; 66 Wis., 168; 50 Mich., 70; 55 Ind., 45; 40 Mich, 420; 39 Ark., 17; 37 Mich., 211; 20 N. E. Rep., 466; 148 Mass., 22; 16 Lea, 391; 87 Ala., 719.

It is the duty of railway companies to explain fully to minors and inexperienced persons the dangers and risks incident to their employment; knowledge of defects and dangers are not imputed to these classes.   8 A. & E. R. R. Cas., 527; 28 A. & E. R. R. Cas., 308; 18 A. & E. R. R. Cas., 14; 1 Lawy. Rep. An., 174 and cases *supra*.

Even if plaintiff knew of the defects, it was still a question for the jury to say whether his exposure to danger was reckless, or whether he exercised the care for his safety that might reasonably be expected.   128 U. S., 91.

2.   Review the cases cited by counsel for appellant, distinguishing them from the case in point.

3.   The mere fact that the complaint, with a former verdict thereon endorsed, went to the jury without any showing that it was fraudulently or designedly done to influence them is not a reversible error.   38 Ark., 313; 20 Me., 93,

4.   The verdict is not excessive.   2 Gilm., 432; 61 Iowa, 452; 49 Ark., 381; 50 Wis., 419; 15 A. & E. R. R. Cas., 312; 25 A. & E. R. R. Cas., 446; 64 Miss., 584; 46 N. Y., Sup. Ct., 211; 71 Mo., 83; 13 Nev., 106, 153; 38 Iowa, 592; 43 Iowa, 676; 43 Hun, 421; 18 Bradw. (Ill.), 418.

5.   *Interest rei publicae ut sit finis litium*, and the judgment should be affirmed.

BATTLE, J.   George Higgins brought an action against the St. Louis, Iron Mountain & Southern Railway Company for $20,000, on account of injuries received by him while in the employment of the defendant.   Two trials were had in the action.   In the first, Higgins recovered a judgment which was reversed on appeal to this court, and the cause was remanded for a new trial.   In the second, evidence was adduced tending to prove the following facts:   On or about the first day of November, 1880, George Higgins was employed by the railroad company as a brakeman on one of its freight trains.   He was then about nineteen years old. During the time he was a brakeman, there was a caboose in the train on which he was employed.   It was old, and the floor of it had sagged.   On this account its draw-head was lower than that of the freight car in front of it, so much so that in coupling them the draw-head of the freight car would pass over that of the caboose, unless the coupling was successfully made.   For five months or more the caboose had been condemned as out of repair; had been repeatedly so marked; and the attention of the master mechanic of the defendant had been twice called to its condition by the conductor.   In coupling it and freight cars, it was necessary to use a crooked link to avoid the danger of coupling caused by the draw-head of the caboose being lower than that of the freight cars.   There was no such link on the train.   At the time he was employed, Higgins had no experience as a brakeman nor in railroading.   During his service he was rear brakeman; had made only two trips on the caboose when he was hurt; never coupled it to another car; it was not his duty to do so.   Until he was injured, his attention had never been directed to the fact that the draw-head of the caboose was lower than that of the freight cars.   He had never been told to use a crooked link in making the coupling. No instruction had been given to him about coupling the caboose to other cars.   On the 31st of December, 1880, as

the train was going north on the defendant's road, near
Homan in this State, the door to one of the box cars
dropped off, and two bales of cotton fell out of it. The con-
ductor instructed the train men to set this car out on the
side-track at Homan, so that the cotton could be put back,
and brought on the next train. In doing this it was neces-
sary to uncouple the caboose from, and couple it to, a box
car. The conductor directed Higgins to do this. This was
about 5 o'clock in the morning. "It was dusky and not
good light." He uncoupled the caboose from the train,
"and left it standing on the main track just below the mouth
of the switch." He then hurried over to the switch and
threw it open. The box car was then set out on the switch
"by a sudden kick back, and the train pulled up to couple
to the caboose." He had then to "hurry back to the
caboose and get there before the train, so as to couple the
caboose to it." All this had to be done, and was done, in a
hurry, "as the train was running on a time order." As the
train moved back, and was within about four feet of the
caboose, he stepped in to make the coupling. He found a
straight link in the rear end of the box car that was to be
coupled to the caboose. He made an attempt to make the
coupling with this link and failed. He discovered then, for
the first time, the condition of the draw-heads of the two
cars. He made an effort to get out, but the draw-heads
passed one over the other, and he was caught between the
platform of the caboose and the end of the box car. He
was severely injured; was unconscious for several hours;
after he returned to consciousness he suffered great pains;
his limbs were paralyzed for a week or longer. He never
has recovered, and cannot, on account of this injury, perform
much labor without becoming sick. Much evidence as to
the nature and extent of this injury, that is not stated in this
opinion, was adduced.

The court instructed the jury, at the instance of plaintiff, over the objections of defendant, as follows:

"Instruction No. 3. If you find from the evidence, that the plaintiff, George W. Higgins, was youthful and an inexperienced brakeman, and had only made one or two trips on the caboose, which is alleged to have been the cause of the injury, and that said Higgins was, at the time of the switching at Homan, required on a sudden emergency, greater than was incident to his ordinary employment, to do work in a hurry; and if you further believe that said Higgins did not know, or could not have known, by the exercise of reasonable care, that the said work of coupling the cars in which he was then engaged, or his manner of doing it, was extra hazardous, you may take into consideration his experience both as a brakeman and with this caboose, in determining whether he acted with reasonable care and diligence under all the circumstances surrounding him at the time of the injury."

"Instruction No. 4. It is the duty of the defendant company to provide suitable means, materials, machinery and appliances to do the work, including sound and sufficient cars. And said company is liable for neglect if it fails to furnish proper and safe machinery or cars, and for failing to keep them in safe and suitable condition for use. The employe only assumes by his employment to take the risks and hazards ordinarily incident to the employment, and if in this case you find that the caboose in question was not safe, and thereby there was extra hazard and risk in coupling the same, which was not incident to his employment, then defendant company was guilty of negligence, and your verdict should be for plaintiff, Higgins, unless you find that any injury might have been prevented by the use of reasonable care on the part of said Higgins, or unless you find that, by the exercise of reasonable care and caution, he could have known of the hazard and danger of his work, and thereupon voluntarily assumed such risk."

"Instruction No. 6. Notice to the master mechanic of a railway company of the defective condition of one of its cars or cabooses is notice to the company, and if you find from the evidence in this case that the caboose in question was in a dangerous condition, and that notice thereof had been given to the master mechanic of the defendant company, such notice was notice to the company, and thereupon rested upon the company the duty to put said caboose in a safe and suitable condition for use, if they continued to use the same after such notice."

The defendant asked for many instructions as to the duties and liabilities of the master to his servant, and contributory negligence of servants, and the liability of the master for injuries caused by such negligence. After modifying each of them so as to instruct the jury that the defendant was not liable if the plaintiff saw the condition of the draw-heads of the caboose and box car, and "knew the increased risks, *or by the exercise of ordinary care could have known the same*," and nevertheless attempted to make the coupling with a straight link and was hurt, the court gave them as modified. The modification consisted in making the knowledge "of the increased risk" by plaintiff or that it could have been acquired by him by the exercise of ordinary care, a condition upon which the defendant could escape liability, the language of the same being "and knowing the increased risk."   ·

After the instructions were given, the court gave the complaint in the action to the jury, with the verdict in the former trial endorsed thereon in the following words and figures: "We, the jury, find for plaintiff and assess his damages at $4,000. J. H. Arnold, Foreman." This was not discovered until the jury returned a verdict. Upon a return of a verdict in favor of plaintiff for $10,000, the defendant moved for a new trial, making the delivery of the complaint to the jury, with the first verdict endorsed thereon, one of its numerous

grounds for asking for a new trial. The motion was overruled, and the defendant appealed.

1. Contributory negligence—Emergency.

The right of Higgins to recover damages of appellant for the injuries received depends on the care and diligence he used at the time he was hurt. Whether he used due care and diligence in coupling the cars of appellant at this time, was a question for the jury. In deciding it, it was their duty to consider his youth and inexperience. *Davis v. Railway*, *ante*, p. 117. So it was their duty to take into consideration the fact that he was on a sudden emergency required to make the coupling in a hurry. It is true ''that an employe is guilty of contributory negligence, which will defeat his right to recover for injuries sustained in the course of his employment, when such injuries substantially resulted from dangers so obvious that a reasonably prudent man, under similar circumstances, would have avoided them if in his power to do so.'' But in determining whether he has failed to exercise due care in exposing himself to danger, it is always necessary to take into consideration the exigencies and circumstances under which he acted. If the service which he undertook to perform was required by a superior, and was such as to demand his exclusive attention, and that he should act with rapidity and promptness, it would be unreasonable to require of him that care, thought and scrutiny which might be exacted when there is time for observation and deliberation. In emergencies, when such attention, rapidity and promptness are demanded, it could hardly be expected that he would always call to mind previous information or knowledge that, if at the moment remembered, would have caused him to avoid the danger from which his injuries resulted. Under such circumstances the question of his due care would depend, to some extent, upon the view the jury might take of the necessity for immediate action and the time he had for reflection or thought. The instruction numbered three, given at the instance of appellee, is therefore substantially correct, and fairly submitted

this question to the jury. *Lawless v. Railway,* 136 Mass., 1; S. C., 18 A. & E. R. R. Cas., 96; *Kane v. Railway,* 128 U. S., 91; *Snow v. Railway,* 8 Allen, 441, 450; *Greenleaf v. Railway,* 29 Iowa, 14, 47; *Plank v. Railway,* 60 N. Y., 607; 1 Shearman & Redfield on Negligence (4th ed.), sec. 213; Wharton on Negligence (2d ed.), sec. 219.

Appellant objects to so much of the instructions numbered four and six, given at the instance of appellee, as instructed the jury as to the duty of the appellant to furnish and keep in repair cars, but this objection can avail nothing. It is evident that appellant was not prejudiced by them. The evidence introduced by both parties shows that the caboose had been repeatedly condemned and marked as out of repair, and remained for a long time in that condition. If appellant did not ascertain its condition, it failed to exercise reasonable and ordinary care and diligence, and was liable for such neglect.

There was no error in the modification made by the court in appellant's instructions. The draw-head of the caboose might have been lower than that of the car to which appellee attempted to couple the same, but not sufficiently so to make it apparent that one would pass over the other, and that the danger of coupling the same would be thereby increased. But if it was, we do not see how the modification prejudiced appellant.

We think the evidence was sufficient to sustain the verdict.

There was no error in the refusal of the circuit court to grant appellant a new trial on the ground that the complaint in this action was delivered to the jury with the former verdict endorsed thereon. There was no objection made to the giving of it to the jury; and it does not appear that it was fraudulently or designedly delivered to influence them, but the contrary is true. *Green v. State,* 38 Ark., 313; *Harriman v. Wilkins,* 20 Me., 93.

2. Improper testimony—Verdict of former jury.

There being no error in the proceedings of the court below prejudicial to appellant, the judgment is affirmed.