RAILWAY COMPANY v. SWEET.

Opinion delivered May 18, 1895.

1. *Reversal in supreme court—Notice of filing mandate.*

Under Sand & H. Dig. sec. 5798, providing that "when a case shall have been reversed and remanded by the supreme court for further proceedings, it may be continued at the first term, unless the mandate shall have been filed with the clerk of the court below, and reasonable notice given to the adverse party, or his attorney of record, before the commencement of the term," it is not error to refuse a continuance to defendant where plaintiff gave notice of the filing of the mandate to defendant's attorney one week before commencement of the term, if no prejudice is shown to have resulted to the defendant.

2. *Evidence—Former testimony of deceased witness.*

The testimony of a witness, since deceased, taken in a former trial, is admissible on a subsequent trial of the same issues between the same parties.

3. *Evidence—Effect of general objection.*

A general objection to the admission of evidence reaches only its relevancy and competency, and not the sufficiency of the foundation laid for its introduction.

4. *Carrier of passenger—Degree of care.*

To charge the jury that a carrier must exercise "the highest degree of care, diligence and skill" in the operation of its trains is not error, especially if qualified by the explanation that the care exacted of carriers toward their passengers is the highest degree of care which a prudent and cautious man would exercise, and which is reasonably consistent with their mode of conveyance and the practical operation of their roads.

5. *Wrongful killing—Damages.*

In an action on behalf of the widow and next of kin of one who was killed by another's negligence, to recover damages resulting from his death, the jury may properly be instructed to consider deceased's "character, business qualifications and capacity for earning money."

6. *Child's loss from parent's death.*

In such case, it was not error to instruct the jury to consider the "value, if any, of deceased's training and instruction to his children," where the proof was that he was a "careful, pains-

taking, industrious, temperate and trustworthy man of good business qualifications," and that, although much away from home, he usually returned for a short stay after an absence of from six weeks to three months.

7. *Damages resulting from death—When not excessive.*

A verdict of $10,000 in favor of the widow and next of kin is not excessive where it is shown that deceased contributed at least $800 annually to their support, that his expectancy of life was twenty-five years, and that it would require over $10,000 to purchase an annuity of that amount for one of deceased's age.

Appeal from Desha Circuit Court, Watson District.

JOHN M. ELLIOTT, Judge.

Action by Mrs. Sweet against the St. Louis, Iron Mountain & Southern Railway company. The facts are stated in the opinion.

*Austin & Taylor* and *Dodge & Johnson* for appellant.

1. The Desha court had no jurisdiction. No notice was given to appellant, as required by sec. 5798, Sand. & H. Dig.

2. The third prayer given at plaintiff's request was erroneous, as applied to this particular case. 57 Ark. 298 ; 52 *id.* 524 ; 14 How. 486 ; 97 Mass. 361 ; 34 Am. & Eng. Ry. Cases, 405; 2 Wood, Ry. Law, sec. 301, pp. 1074–9 and cases cited ; Hutch. on Car. secs. 502, 529 ; Patterson, Ry. Acc. Law, sec. 247 ; 93 U. S. 291.

3. The fourth prayer for plaintiff was erroneous, and tended to increase the amount of damages, when there was no proof justifying same. 57 Ark. 315 ; 59 Ill. 534 ; 46 Ia. 195 ; 28 Oh. St. 199 ; 37 Mich. 205 ; Ill. 302 ; 19 Kas. 83 ; 48 Pa. 320 ; 18 Ia. 290 ; 18 Ill. 349 ; 41 Ark. 388 ; 51 *id.* 515.

4. The verdict is excessive. 52 Fed. 378 ; 41 Ark. 388 ; 57 *id.* 321 ; *Ib.* 384 ; 29 Gratt. 431 ; 16 S. W. 929 ; *Ib.* 240 ; 48 Fed. 663.

5. Deceased was guilty of such contributory negligence as precludes a recovery in this case. 89 Mo. 233; 84 Ga. 651; 38 Fed. 822.

6. It was error to admit the testimony of Roan Sykes. Sand. & H. Dig. sec. 2978. The statute means "*deposition*," in its legal and proper sense. Rap. & L. Dic. p. 377; 3 Blatch. 456; 42 Ark. 285; 47 *id.* 180; 58 *id.* 242; 46 *id.* 378. These authorities all refer to *depositions*, and not to *statements* made on a former trial. No foundation was laid for its introduction.

7. It was error to allow the jury to carry with them the original complaint, upon which was endorsed the former verdict. 16 Pet. 166, 147; 1 Ark. 590; 6 N. H. 148; 5 Pick. 297; 17 Ga. 415. It did not devolve on appellant to show that this important evidence was read by the jury, for a verdict cannot be impeached by the affidavits of jurors. 29 Ark. 293; 35 *id.* 109; 60 N. Y. 648; 5 Col. 276. See 11 Iowa, 62; 53 Ark. 46; Hayne on New Trial and Appeal, sec. 68; 45 Barb. 98; 4 Greene (Iowa), 32; 50 Ill. 250; Proffatt on Jury Trial, secs. 390–392; 19 N. H. 148; 8 Barb. 47; 3 Foster (N. H.), 497; 19 Ill. 480; 30 N. W. 682; 11 Iowa, 65; 25 Ga. 494; 4 Yerg. 111; 56 Me. 493; 1 Brev. 16; 18 B. Mon. 291; 32 N. W. 246.

*N. T. White, H. K. White, W. T. Woolridge* and *Rose, Hemingway & Rose* for appellees.

1. The case was tried on the day fixed by agreement between counsel upon the respective sides. Every witness subpœnaed by appellant was present except one, and he was dead. A similar objection was overruled in 57 Ark. 287.

2. The third instruction correctly defines the extent of care to which defendant was bound in operating its trains, *i. e.*, "the highest degree of care, diligence and skill." 93 U. S. 291; 40 Ark. 298; Hutch. on Car.

sec. 501 ; 2 Wood, Rys. p. 1074 ; Cooley, Torts, pp. 642–3 ; 34 Ark. 625 ; 51 *id*. 467 ; 52 *id*. 524 ; 55 *id*. 254 ; 53 *id*. 466 ; 56 *id*. 594.

3. The court properly instructed the jury that the decedant's character and business qualifications could be considered in determining what pecuniary loss the widow and children had sustained. Hutch. on Car. 784 ; 3 Suth. Dam. secs. 1267–8–9 ; 37 N. Y. 287 ; 91 Pa. St. 185 ; 29 Grat. 431. Testimony that deceased was sober, industrious, trustworthy, reliable and capable, was a sufficient showing of his fitness to render services in rearing and educating his children, and the court properly instructed the jury to consider the value, if any, of his instruction and training to his children. 57 Ark. 321 ; 24 N. Y. 471 ; 29 *id*. 282 ; 29 Grat. 431 ; 93 Ind. 523 ; 28 Wis. 522. The only case where it is held that proof is necessary to warrant the instruction is 52 Ill. 290. See 2 Sedg. Dam. p. 214, note *b*.

4. The verdict is not excessive. Sweet was 34 years old, and contributed $850 per annum to the support of his family, and it would take $10,827 to purchase an annuity, at 6 per cent., to replace the loss. This makes no allowance for increased earnings, or the value of his services in rearing his children. See 75 Tex. 61.

5. The question of contributory negligence was settled by the verdict of the jury. Even if Sweet sat in a chair, this was not negligence *per se*, but presented a question for the jury. 34 A. & E. Ry. Cases, 545 ; 73 Iowa, 458.

6. Sykes being dead, his testimony on a former trial of the same cause, between the same parties, was competent. 58 Ark. 370–1 ; 9 Mo. App. 5 ; Gr. Ev. sec. 166.

7. The taking the complaint by the jury to their room, with the verdict in the former trial thereon endorsed, does not warrant a reversal. 53 Ark. 458.

WOOD, J.   This suit was brought by the administratrix for herself, as the widow, and her children, as the next of kin, to recover damages for the killing of Frank Sweet.   The complaint in substance charged that, "by reason of the careless and negligent conduct of the defendant railway company in the care and maintenance of its track, and the proper and careful management of its train," one of its cars, upon which Frank Sweet was a passenger, was derailed, and he was run over, and killed.

The answer admitted that Sweet was a passenger, and that he was killed, but denied negligence, and charged Sweet with contributory negligence.   Damages were laid at twenty-five thousand dollars.   The judgment was for ten thousand dollars.   The company appeals, and asks to reverse, for the following reasons, to-wit:   (1) The court erred in forcing defendant to a trial when the mandate of this case has not been returned, or filed in the Desha circuit court within a reasonable time before the convening of that court, and for the further reason that no notice of the filing of said mandate, reasonable or otherwise, had been served upon defendant, as by law required.   (2) Because the court erred in permitting the testimony of Roan Sykes to be read to the jury.   (3) Because the court erred in permitting witness Atkinson to give incompetent testimony in evidence to the jury.   (4) Because the court erred in permitting the jury to carry with them into the jury box the verdict rendered in the former trial, all of which was to the prejudice and injury of this defendant.   (5) Because the court erred in giving to the jury instructions 3, 4, and 5, as asked by plaintiff.   (6) Because the court erred in refusing to give instruction 10, as asked by defendant.   (7) Because the verdict is contrary to law.   (8) Because it is contrary to the evidence.

(9) Because the verdict is excessive, and is the result of prejudice and passion, and is not sustained by the evidence.

1.   The object of sec. 5798, Sand. & H. Dig., providing for filing of the mandate with the clerk and reasonable notice to the adverse party, or his attorney of record, before the commencement of the term, was to give ample opportunity to said party to make preparation for another trial.   The requirement may be waived by agreement, but where this has not been done, and there is a failure to comply with the statute, this court will not reverse because of the refusal of the lower court to grant a continuance on account of such failure, where no prejudice is shown to have resulted to the party asking the continuance.   The appellant was not prejudiced.   Notice was served upon its attorneys of record on the 31st day of July, 1893, that the mandate of the supreme court would be filed with the clerk of the Desha circuit court on the first day of August following.   The mandate was filed on that day.   The term did not commence until the 7th of August.   The attorneys for the appellant joined with the attorneys for appellee in a request to the clerk to set the cause for hearing on the 9th of August, the third day of the term.   It is true that the attorneys for appellant expressly reserved the right, in this request, to object to the trial if they saw proper.   But the appellant does not suggest or show that it was not advised of the contents of the mandate in time to have prepared for trial. All the witnesses for appellant had been summoned, and were present, except one, and the attorneys for appellant admitted that he was dead.   The court was right in overruling the motion for continuance.

2.   The bill of exceptions recites that "the plaintiff offered in evidence the testimony of Roan Sykes taken at a former trial of this cause.   The defendant objected to

1. Sufficiency of notice of filing of mandate.

2. Former testimony of deceased witness admissible.

the introduction of said testimony, but the court over-
ruled said objection, and permitted the plaintiff to read
in evidence the testimony of the said Roan Sykes, as
taken at a former trial of the cause, to which the de-
fendant at the time saved all proper exceptions." It
was shown that this witness had died since the former
trial. This being the case, his testimony at that trial
was competent in a subsequent trial of the same issue
between the same parties. *Green* v. *State*, 38 Ark. 305;
*McNamara* v. *State*, *ante*, p. 400 ; *Vaughan* v. *State*, 58
Ark. 353 ; 1 Gr. Ev. sec. 163.

3. Effect of
general objec-
tion to evi-
dence.

The objection of appellant to this testimony was
general. It presented no specific grounds for its exclu-
sion. Nowhere is it suggested that the manner of prov-
ing the testimony of this witness was improper. A gen-
eral objection reaches only the relevancy and competency
of testimony. This was competent and relevant. But
counsel argue here that the testimony of Sykes was in-
admissible because it was read from a bill of exceptions
prepared for the purpose of an appeal from a former
judgment, and because the foundation for its introduc-
tion was not sufficient. Had these objections been made
before the trial court, if tenable, doubtless the court
would have had them removed, or else have excluded the
testimony. *Vaughan* v. *State*, 58 Ark. 353, and author-
ities there cited ; *Rogers* v. *State*, *ante*, p. 76 ; *Railway
Company* v. *Murphy*, *ante*, p. 333.

3. The third assignment has been abandoned.

4. This court has ruled adversely to the contention
of appellant on the fourth assignment in *St. Louis etc.
Ry.* v. *Higgins*, 53 Ark. 458.

4. Degree of
care exacted of
carrier.

5. The appellant contends that so much of the
third instruction as told the jury that "it was the duty
of the defendant in the operation of its trains to exercise
the highest degree of care, diligence and skill" was erro-
neous. This language does not mean "the utmost dili-

gence which human skill and foresight could effect,"
which was the language condemned by this court when
the case was here on a former appeal. *Railway Co.* v.
*Sweet,* 57 Ark. 287. Nor does it state the rule more
broadly or rigorously than is approved by the highest
authority. *Phil. & Reading R. Co.* v. *Derby,* 14 How.
486; *Steamboat New World* v. *King,* 16 How. 469; *New
York Cent. R. Co.* v. *Lockwood,* 17 Wall. 357; *Indian-
apolis etc. R. Co.* v. *Horst,* 93 U. S. 291; 2 Redf. Rail-
ways, 219; Hutch. on Car. sec. 501; 2 Wood's, Rys. p.
1074; Cooley on Torts, pp. 642-3; *Balt. & O. R. Co.* v.
*Wightman,* 29 Gratt. 431. See, also, *George* v. *Railway
Co.* 34 Ark. 613; *Miles* v. *Ry. Co.* 40 Ark. 298. How-
ever, to preclude all possibility of misconception of such
general terms as "highest degree of care," the trial court
should always explain them so as to show that the care
exacted of railway companies toward their passengers is
the highest degree of care which a prudent and cautious
man would exercise, and that which is reasonably con-
sistent with their mode of conveyance, and the practical
operation of their roads. *Pittsburg etc. Railroad* v.
*Thompson,* 56 Ill. 138; *Railway Co.* v. *Murray,* 55 Ark.
248; *Ark. Midland Ry.* v. *Canman,* 52 Ark. 524; *Eureka
Springs R'y.* v. *Timmons,* 51 Ark. 459; *Railway Co.* v.
*Sweet,* 57 Ark. 287. This is what the trial court did in
several of the instructions given on motion of the appel-
lant. There is, therefore, no occasion to complain of the
language employed in the charge under consideration.
*Fordyce* v. *Jackson,* 56 Ark. 594. But plaintiff aban-
doned the allegation of negligence on the part of the rail-
road "in the proper care and management of its train."
The proof shows that the plaintiff relied solely "upon
the careless and negligent conduct of the defendant rail-
way company in the care and maintenance of its track."
Sweet lost his life by the derailment of appellant's cars,
and the uncontroverted proof was "that the ties were

rotten," that "the track was in a bad condition." Such being the fact, an instruction in reference to operating the train, even though erroneous, could not have prejudiced appellant, unless the verdict of the jury was excessive. For the verdict, in the absence of any proof of contributory negligence, must have been for appellee, and we shall see later on that it was not excessive. *Fordyce* v. *Jackson*, 56 Ark. 594.

Objection is urged also to so much of prayer number four, given on motion of the plaintiff, as told the jury that, "in fixing the amount of damages, they will take into consideration deceased's character and business qualifications, his capacity for earning money, and the value, if any, of his instructions and training to his children."

5. Damages for wrongful killing.

This was not a suit to recover for the benefit of the estate, but for the benefit of the widow and next of kin. The measure of their damages is what the jury may "deem a fair and just compensation with reference to the pecuniary injuries resulting from the death" of the husband and father. Sand. & H. Dig. sec. 5912. How is this compensation to be determined? By taking into consideration the age, health, habits, occupation, expectation of life, mental and physical capacity for and disposition to labor, and the probable increase or diminution of that ability with the lapse of time; deceased's earning power, rate of wages, and the care and attention which one of his disposition and character may be expected to give his family—all these are proper elements for the consideration of the jury in determining the value of the life taken. From the amount thus ascertained, the personal expenses of the deceased should be deducted, and the balance, reduced to its present value, should be the amount of the verdict." Suth. on Dam. sec. 1268 ; *Central Railroad* v. *Rouse*, 77 Ga. 393 ; *Balt. &. O. R.*

*Co.* v. *Wightman,* 29 Gratt. 431; Field on Dam. sec. 632; *Mansfield &c. Co.* v. *McEnery,* 91 Pa. St. 185.

The rule includes "character, business qualifications and capacity for earning money." It would be a travesty upon justice and a reproach to the law if the sobriety, industry, honesty and ability of deceased—the constituents of character, and the very things which determine a man's business qualifications—were not permitted to be considered by the jury. Otherwise our constitution and statutes, making railway companies responsible for all damages to persons, and giving to the widow and next of kin the right to fair and just compensation (Const. art. 17, sec. 12; Sand. & H. Dig. secs. 6349, 5911–12), would be but a mockery. If these elements were excluded from the computation for damages, nothing would be left to consider that makes life of any value from a pecuniary standpoint.

The appellant also objects to the court's telling the jury in the same instruction to consider the "value, if any, of deceased's training and instruction to his children," for the reason "that there was no evidence to justify such an instruction." The proof showed that Sweet was a "careful, painstaking, industrious, temperate, and trustworthy man of good business qualifications." That was enough. It would be an anomaly in human nature, and contrary to all experience and observation, wherever social order prevails, and the family tie is recognized, to find a father of such a character who was not of some pecuniary value to his children in the way of training and instruction. How much, is always for the jury to say, and each case will depend upon its own facts and circumstances. The attributes of such a character being shown in the father, the law would presume them of some value to his children until the contrary was made to appear. Circumstance or fortune might call him away from them all or most of the time,

<em>6. Child's loss from parents' death.</em>

but it must be presumed, in the absence of proof to the contrary, that the natural affection of a father, possessed of the characteristics shown here, would prompt him to counsel, train, and care for his children in a manner to make his life of some pecuniary value to them. *Railway Co.* v. *Maddry*, 57 Ark. 321 ; *McIntyre* v. *New York Cent. R. Co.* 37 N. Y. 287 ; 1 Greenleaf, Ev. 33. See, also, in this connection, the cases, *Tilley* v. *Hudson River Ry.* 24 N. Y. 471 ; and S. C. 29 N. Y. 282; *Balt. etc. Railway* v. *Wightman*, 29 Gratt. 431; *Board* v. *Legg*, 93 Ind. 523 and 2 Sedg. Dam. p. 241, note *b*, all cited in brief of counsel for appellee.

But it was in evidence that the deceased, although usually away from home, returned for a short stay after six weeks to three months' absence. This, in connection with the proof of his character, certainly made that part of the instruction quoted above proper.

6. There is nothing in the sixth, seventh and eighth assignments.

7. When damages not excessive.

7. The ninth assignment, "that the verdict is excessive," is not well taken. It appears that Sweet contributed from eight to nine hundred dollars a year to the support of his family, and that he earned money aside from his regular wages. He was thirty-four years of age, in good health, a robust man. He had an expectancy, as shown by the Carlisle life tables, of twenty-five years. The jury doubtless weighed all the probabilities of loss from sickness and other various contingencies, likely to arise in the course of a man's life, and balanced these against the probabilities also of an increase of efficiency in money-making power. They might have found from the evidence that Sweet's life was worth at least eight hundred dollars per annum to his wife and children, not taking into account the value of his training and instruction to his children ; and, according to the Carlisle tables (which were in evidence), estimating

money at the legal rate, it would require over ten thousand dollars to purchase an annuity of eight hundred dollars for one of Sweet's age. We cannot say that the verdict was excessive.

Let the judgment be affirmed.