## WISCONSIN & ARKANSAS LUMBER CO. v. PRICE.

### Opinion delivered October 23, 1916.

MASTER AND SERVANT—INJURY TO SERVANT—UNACCUSTOMED TASK.—Defendant company's foreman ordered plaintiff, an employee, to do certain work to which he was unaccustomed and which normally required the services of two men. After performing the service in safety for several hours, plaintiff sustained an injury to his finger. *Held*, under the evidence that the defendant was not liable in damages for the injury, no negligence nor the violation of any duty owing to the plaintiff being shown, and the plaintiff failing to show that the service could not have been continuously performed safely had he continued to exercise due care.

Appeal from Hot Spring Circuit Court; *W. H. Evans*, Judge; reversed and dismissed.

#### STATEMENT BY THE COURT.

The appellee, a young man twenty-two years of age, was in the employ of appellant. His usual work was taking down what was called "strip stock" and loading same on a lumber truck, which he designated "the buggy." On the morning of the 18th of May, 1914, the foreman of appellee ordered him to leave his usual work and go down and pull lumber off of the chains. The duty of taking the lumber from the chains required that appellee stand at a certain point, with the transfer chains at his right and the truck or buggy on which he loaded the lumber at his left. The transfer chains ran along the length of a table at an elevation of about three or four feet. The width of the table on which these chains were operated was something like six feet. The boards of lumber were placed one after another in succession on the transfer chains and were by this means transported to certain points along the chains where employees were situated to unload them as they passed. The machinery was so arranged that it carried by the place where appellee was situated either lumber from the cars or from the rip stock, or from both, just as the foreman should direct.

The foreman told appellee on this occasion, "Now, I want you to get them," meaning that appellee was to catch the boards of lumber as they came by on the transfer chains and load the same on the buggy or truck. When lumber was coming only from the cars one man could handle it, and one man could handle it when it was coming from the rip stock department only, but when it was coming from the cars and also the rip stock department it required the services of two men to handle it.

Appellee, on the occasion mentioned, had to catch both the lumber from the car and also from what they called the rip stock. He was directed by his foreman to do this work, which usually required the services of two men. Appellee was put in the position three or four minutes before 7 o'clock in the morning and worked until about 11 o'clock. He had not worked in this position before. Appellee, while doing this work, had the middle finger of his left hand injured. He testified as to the manner of his injury as follows: "The way I came to get hurt, I had taken hold of a plank and had hold of it back this way (demonstrating) and went to put it on the buggy and bumped my hand against the plank on the buggy and busted my finger. The way my hand came to get caught there, was by overrush of work. I couldn't catch them. I was watching what was coming and what I was putting on the buggy. I was working so fast I didn't have a chance to catch them. I was doing the work as carefully as I could. I was doing all I could to obey the orders of my foreman to get all these slabs that came by. This stock and stuff was coming over the chains sometimes three and four deep, and I had to take all of it, not let any of it get by, and load it. I had to obey what the foreman told me and I was trying to do it. The pieces were coming one right after another and sometimes piled upon top of each other. I had hold of it with my left hand. I caught hold of it some distance on the plank with my right hand and shoved the plank back against the lumber on the buggy and mashed my finger. If

I had had time to have noticed what I was doing I might have taken hold of the side of it, but I didn't have time; it was coming so fast I was overrushed. I don't expect I would have been hurt if I had taken hold of the side of the plank with both hands. If my hand had not been on the end of the board it would not have been hurt. Some of the boards passed me that morning without me taking them off; I could not catch them. When they passed me I don't know whether the next man could get them or not. We were all grading and every man had to catch his own grade. If I didn't catch my grade it went down to the end of the chain and fell off. I was ordered by my foreman to get the planks that came by me and not let them go by. That's what I was trying to do and in order to do that, I had to keep my eye both on the car the best I could and the planks to keep them from going by."

Appellee instituted this suit against the appellant for damages, alleging that the appellant was negligent in requiring appellee to do the work of two men in handling the large volume of lumber; that thereby appellant rendered unsafe and dangerous the work which plaintiff was required to do, and that by reason of such negligence appellee received his injuries.

The appellant denied the allegations of negligence, and set up the defenses of contributory negligence and assumed risk on the part of the appellee.

The above are substantially the facts, stated in the most favorable light for appellee, upon which the verdict and judgment were based.

*T. D. Wynne*, for appellant.

The negligence complained of was not the proximate cause of the injury, but the injury resulted from appellee's own careless and inattentive conduct.

The proximate cause, to render the defendant liable, must be the wrongful act of the defendant or its employees, otherwise no cause of action for the injury can be maintained. 1 White, Personal Injuries, par.

39; 24 S. E. 278; 36 N. Y. S. 926; 102 Mich. 72; 60 N. W. 286; 44 N. E. 273; 72 N. Y. S. 501; 58 S. W. 151.

*J. C. Ross*, for appellee.

The proof is positive both that it had been the custom to put two men to do this work, and that it *required* two men to do it.   It was therefore clear negligence for the foreman to direct and require appellee alone to do the work.   As to the duty of a master to furnish adequate help, see 4 Thompson on Negligence, §§ 3807, 4175, 4768, 4829, 4865, 4868; White's Supp., § 3807; 3 Labatt, Master and Servant, §§ 1107, 1108. The negligence of the foreman in requiring appellee to do this work alone was the proximate cause of the injury.   The agency which resulted in the injury complained of was the negligence of the foreman in not providing the usual and necessary number of men. 97 Ark. 576; 104 Ark. 59; 1 Thompson, Neg., § 49; *Id.*, §§ 52, 64; 77 Ark. 377; 191 Ill. 439; 116 Ky. 318; 90 Minn. 343; 215 Mo. 567; 114 S. W. 1013; 181 S. W. (Ark.) 278; 3 Labatt, Master and Servant, §§ 1256, 1273, 1274; 33 Ia. 52, 59; 51 Ore. 21; 11 Ind. App. 118, 129; 99 Ark. 254, 257; 53 Ark. 466.

WOOD, J. (after stating the facts.)   The appellant contends that the undisputed evidence shows that it is not liable.   This is the only ground urged for a reversal of the judgment.

It appears that appellee received his injury by taking hold of the plank with his left hand gripped to the end of it and shoving the end so gripped against the plank on the lumber buggy.   If he had caught hold of the board on the side with both hands, and had not had his left hand on the end when he shoved it against the plank on the lumber buggy, he would not have been hurt.   He had loaded possibly three or four buggies that morning before he received his injury and had worked about four hours at that place before he was injured.

There was testimony to warrant the jury in finding that the appellant was negligent in directing appellee

to do the work that required the services of two men to perform. But there is no testimony to warrant the conclusion that such negligence caused or contributed to the injury of the appellee.

Appellee's testimony shows that notwithstanding the rush order of the appellant, he had been able to obey the order and do the work which he was directed to do for at least four hours without injury, and that so long as he handled the lumber in such manner as not to permit his hand to come in contact with the plank on the truck he escaped injury.

While appellee testifies that the injury was caused by overrush of work, this was a mere conclusion of his, and an incorrect conclusion, too, since he testified to facts which show conclusively that the injury was caused by handling the lumber in the manner that appellee himself adopted.

The undisputed testimony of the appellee shows that it was not necessary for him to handle the lumber in the particular way that he was handling it at the precise moment when he injured himself. Appellee does not pretend that he was overrushed any more after he had worked for four hours than when he first began to remove the lumber under the directions of the foreman.

Although the appellee, by reason of the failure of the appellant to furnish another man to assist him, under the orders of the foreman, was constrained to rush the work, his undisputed testimony shows that for about four hours he had endeavored to obey the commands of his foreman and had done so by handling the plank in a way not to injure himself. The fact that he had done this for four hours shows that he might have continued to do so by exercising the same care for his protection that he did when he first began to work. Appellee did not testify, and there is no testimony to warrant the conclusion that by reason of the strain that he was under and the labor that he had done for four hours in endeavoring to obey the commands of his foreman, he had become so fatigued that he was

unable to handle the lumber as he had been doing, or that it was necessary for him to place his left hand in the position it was in at the precise moment when he received the injury.

If appellant had furnished another employee to assist appellee in removing the lumber, still this would not have prevented appellee from being injured if he hand handled the plank in the same manner that he did handle it at the precise moment of his injury, and there is no evidence to warrant the conclusion that appellee would not have taken hold of the plank as he did if he had been furnished an assistant.

Inasmuch as the undisputed evidence shows that appellee, notwithstanding the strain and hurry caused by the directions of his foreman, could and did handle the lumber for about four hours in such manner as to avoid injuring himself, the jury were not justified in finding that the manner in which he handled it at the precise moment of the injury was caused by such rush and hurry. If the appellee had shown that by reason of the order of the foreman, requiring him to do the work of two men, he was under the necessity, while discharging his duties, of placing his hand where it was at the time he received the injury, or that in attempting to carry out the orders of the foreman he did not have time to see how he should place his hands in order to do the work, and at the same time avoid injury to himself, then the case would have been different. But the undisputed testimony of the appellee shows that he was under no such necessity.

The testimony does not show or tend to show that the appellee, by direction of his foreman was placed in an emergency where he did not have time to choose between a safe and an unsafe way of handling the lumber. On the contrary, the undisputed evidence shows that he had for nearly four hours adopted a perfectly safe method. We are convinced, therefore, that the undisputed evidence shows that the method adopted by the appellee in handling the lumber at the precise moment of his injury was not caused by the

failure upon the part of the appellant to furnish him a helper to do the work, or by reason of the orders of the foreman requiring him to do such work without an assistant. Had an assistant been furnished appellee, he would still have had to handle his part of the lumber.

While appellant, through its foreman, directed the appellee to do certain work which required the services of two men to perform, appellant did not direct the appellee to handle the lumber in a particular way or in a manner that was calculated to result in his injury. The appellee adopted his own method of handling the lumber, and his testimony shows that by one method which he adopted he was able to handle it without injury to himself for a period of four hours, when he attempted to handle it in a different way that resulted in his injury. While the testimony shows that appellant must have known when it directed appellee to do the work that in order to accomplish his task he would have to rush and do the same work that two men were accustomed to do, yet there is no testimony to warrant the jury in finding that appellant could have reasonably anticipated that the order of the foreman would cause the appellee to handle the lumber in the particular manner that caused his injury. Neither the work itself nor the place of work was dangerous, because if appellee failed to catch each piece of lumber as it passed by, such failure could not have resulted in his injury, for, in that event, the lumber would pass on and drop off at the other end of the chain. We conclude, therefore, that the undisputed evidence shows that the appellee's injury was caused, not by the negligence of the appellant, but was the result of his own inadvertence in the manner of handling the lumber.

We have examined the cases upon which appellee relies and they are all differentiated by the facts from the case under review. In the case of *Griffin* v. *St. L., I. M. & S. R. Co.*, 121 Ark. 433, 181 S. W. 278, five men were directed by their foreman to pick up a heavy piece of timber and to carry the same to a push car. It was shown that it was customary for a crew of seven

to nine men to handle a timber of that size. Griffin was one of the five men who were directed to carry the load, and while attempting to do so his foot turned or slipped on the gravel and he was injured. There the foreman directed the particular manner in which the employees should do the work, and that manner was negligent because the work itself was dangerous when done in that way, and, as the jury might have found, the injury to Griffin was but the natural and probable consequence of such negligence. In other words, the strain of the heavy load put upon Griffin by the foreman caused his foot to turn upon the ground. Nothing that Griffin did caused it.

In *Bolen-Darnell Coal Co.* v. *Rogers*, 99 Ark. 254, the company left a hole in the street, into which Mrs. Rogers by inadvertence fell. The negligence of the company was the direct and proximate cause of the injury.

In the case of *St. L., I. M. & S. Ry. Co.* v. *Higgins*, 53 Ark. 458, upon which appellee relies, Higgins was a brakeman and was directed by the conductor to make couplings between cars whose drawheads were known to the conductor to be wholly defective. This defective condition was unknown to Higgins until he attempted to make the coupling. The defective drawhead was the proximate cause of the injury. There was no issue as to the negligence of the Railway Company being the proximate cause of the injury. The liability of the railway company turned upon the issue as to whether or not Higgins was guilty of contributory negligence, and the facts showed that he was confronted with an emergency in which he had to determine on the instant whether he could make the coupling with the straight link that was in the box car which the conductor had ordered coupled onto the caboose. The effect of the holding in that case was that the railway company could not escape liability for its negligence on account of the alleged contributory negligence of Higgins, because the jury were warranted in finding under the evidence that Higgins was not guilty of contributory

negligence.    The issues and facts were entirely different from those in the case at bar.

So other authorities upon which appellee relies are readily distinguished from the present case.

The court, upon the undisputed facts, should have given appellant's prayer asking a directed verdict in its favor, and for this error the judgment is reversed, and the cause will be dismissed.