ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY
COMPANY *v.* SHARP.

Opinion delivered November 16, 1914.

1. MASTER AND SERVANT—WRONGFUL DEATH—FEDERAL EMPLOYER'S LIA-
BILITY ACT—RECOVERY.—In an action for damages under the Fed-
eral Employer's Liability Act, the recovery of damages for wrong-
ful death must be for the benefit of the widow and next of kin.

2. MASTER AND SERVANT—INJURY TO SERVANT—RULES—ABROGATION OF.—
Deceased, an employee of defendant railroad company, was injured
while in the course of his employment, and while violating a rule of
the company designed for the safety of employees. *Held*, the evi-
dence was sufficient to show that the rule was so habitually vio-
lated as to amount to an abrogation thereof, and that the defend-
ant company acquisced in the abrogation of the rule.

3. MASTER AND SERVANT—RULES—ABROGATION.—In order to constitute
the abrogation of a rule of an employer governing the conduct of
his employees, there must be acquiescence on the part of the em-
ployer, either in express terms, or by silence, after knowledge of
habitual violation of the rule by the employees.

4. MASTER AND SERVANT—RULES—ABROGATION—KNOWLEDGE OF MASTER.—
Knowledge of a master that its rules are being violated by its em-
ployees, may be inferred from the notoriety of the habitual cus-
tom of the employees in disregarding the rule.

5. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—KNOWLEDGE
OF OTHER SERVANTS.—A rule of defendant railway company required
its employees to display certain flags or lights when working under
its cars. Deceased was injured while working under a car but had
failed to display the signal required by the rule. *Held*, where the
evidence showed an abrogation of the rule, deceased was not guilty
of negligence in failing to display the signal, and defendant com-
pany would be liable for an injury due to an act of negligence of
other employees resulting in deceased's injury.

6. MASTER AND SERVANT—INJURY TO SERVANT—FAILURE TO OBSERVE RULE
—ABROGATION OF RULE.—Where the servant of a railroad company
was injured by reason of his failure to observe a rule of the de-
fendant company, that failure alone will not bar a recovery, when
the evidence shows that the rule had been abrogated.

Appeal from Marion Circuit Court; *George W. Reed,*
Judge; affirmed.

*E. B. Kinsworthy, McCaleb & Reeder* and *T. D.
Crawford,* for appellant.

The evidence does not justify the giving of instruction 2. It was improper to submit to the jury the question whether the rule had been openly, continuously and habitually disregarded for a number of years, when the proof shows it had been in operation only a little over a year when Sharp was injured. And the testimony did not justify submitting to them the question whether the nonobservance of the rule was known to the appellant or to Sharp's superior officers, or was of such a long period and of so frequent occurrence as to justify the belief that appellant must have known and acquiesced in its nonobservance.

A rule made by a railroad company solely for the safety of its servants, will be enforced unless it is shown that the railroad company has insisted on a disregard of the rule in order to hasten the work. 98 S. W. 1070.

Unless the evidence shows that, subsequent to the time the master mechanic lectured the men upon the necessity of obeying the rule, which, the testimony shows, was but a short time prior to Sharp's injury, there was habitual disregard of the rule by the employees, and knowledge thereof was brought home to the master, there was no testimony to submit this issue to the jury. 97 Ala. 187; 110 Ala. 143; 47 Fed. 204.

The instruction took from the jury consideration of the defense of contributory and assumed risk, in so far as they were based upon Sharp's disobedience of the rule. 88 Ark. 20; 14 L. R. A. 552.

*Jones & Seawell* and *Hamlin & Seawell,* for appellee.

1. It was a question of fact for the jury to determine from the evidence whether the rule had been customarily and habitually disregarded, how long the custom had prevailed, and whether such custom was known to and acquiesced in by the appellant, and the jury's verdict is conclusive upon that question. 77 Ark. 410; 54 Ark. 299; 84 Ark. 380; 92 Ark. 563; 48 Ark. 348; 250 Mo. 245; 164 Mo. App. 543; 5 Thompson on Neg., § 5404.

2. We think there was ample evidence on which to base instruction 2 complained of. Appellant's conten-

tion that the rule had not been violated a sufficient length of time to give rise to the custom of nonobservance is untenable, in view of the proof that there was an oral rule in force for several years prior to the promulgation of the printed rule about eighteen months before the accident, and that both rules were habitually disregarded and violated.

The instruction is right and has been approved by this court. 77 Ark. 409; 100 Ark. 119; 83 Ark. 70.

McCULLOCH, C. J.   Plaintiff's intestate, W. N. Sharp, worked for defendant railroad company in the yards at Newport, Arkansas, as car inspector and repairer; and, while in the discharge of his duties, received personal injuries from which death resulted on the following day. He was survived by his widow and two children, and this action was instituted by the widow, as administratrix of the estate, to recover damages resulting from decedent's injury and death.   Sharp was working underneath a freight car, repairing an air pipe called the train-line, when a car which was kicked in on the same track by the switch crew ran against the car underneath which he was working and caused it to run over him and cut off one of his legs.   The car which he was repairing was one used at the time in interstate commerce.   It was consigned at Kansas City, Missouri, to Tuckerman, Arkansas, and when it arrived at Newport on the day before Sharp's injury, the defect was discovered and it was left out of the train for repairs.   Sharp and a fellow-worker named Ellen composed the day shift of car repairers who worked under a foreman; and on the day the car was left at Newport, they did some work on it.   That was Saturday afterenoon, and the next morning, Sunday, the car was shifted to another position and Sharp and his companion resumed their labors, when the injury occurred.

(1)   The plaintiff does not in her complaint expressly declare upon the Federal statute known as the "Employers' Liability Act."   Nor does the complaint even contain an allegation that Sharp was engaged in

work on a car used in interstate commerce; but that fact is set forth in the answer and the case was tried under the terms of that statute. The rights of the parties must therefore be determined by the terms of the Federal statute. The plaintiff asked recovery in one count for the benefit of the estate, and the other for the benefit of the next of kin. But under the terms of the Federal statute, the recovery on both elements of damages must be for the benefit of the widow and next of kin, and can in this case be so treated. *St. Louis & S. F. Rd. Co.* v. *Conarty,* 106 Ark. 421.

The alleged act of negligence relied on for recovery in the case is that of the members of the switch crew, who, it is charged, with knowledge that Sharp and his companion were at work there, negligently kicked the car in on the track and against the car beneath which they were at work. The contention of the defendant, on the other hand, is that there was a rule of the company requiring the car repairers to protect themselves by the use of blue flags which would give warning of their presence under cars; that deceased violated the rule by failure to put out flags; and that his own act of negligence was the sole cause of his injury. Plaintiff met this contention by attempting to prove that there was a uniform and habitual violation of the rule, within the knowledge of the officers and servants of the company whose duty it was to enforce it, which amounted to a total abrogation of the rule; that the customary method of work in the yards at Newport was that when a car was placed in position or spotted on the sidetrack for repairs, the members of the switch crew must refrain from running cars on the track until they receive notice that the repairs had been completed; and that in this instance the switch crew knew that the car had been placed there for repairs, but, without notice, kicked a car in on the sidetrack against this car. The defendant established by proof the fact that it had promulgated a rule that "a blue flag by day and a blue light by night, at one or both ends of an engine, car or train, indicates that workmen are under or

about it," and that "workmen will display blue signals, and the same workmen are alone authorized to remove them." It was proved, also, that Sharp, when he took service with the company, about a year before his injury and death, signed a statement acknowledging receipt of a copy of the rule. The defendant also adduced testimony of numerous witnesses to the effect that the rule had never been disregarded or abrogated, and that the constant effort of the company was to enforce it. The plaintiff adduced testimony of numerous witnesses, men who worked in the yards at Newport, to the effect that this rule was always disregarded and that the foremen of the car repairers, when frequently importuned to furnish the flags, expressly refused to do so and instructed the repairers to disregard it. There were two switch crews—a day shift and a night shift—in charge of a foreman; and also two repair crews or shifts working under another foreman; and it was proved by affirmative testimony that the foreman of each of these crews knew of this habitual disregard of the rule and acquiesced in it, the proof being that some of them expressly declined to regard the rule and gave directions to the workmen to disregard it.

(2-3)    We think the testimony on the part of the plaintiff was sufficient to establish such an habitual disregard of the rule, with the knowledge and acquiescence of those whose duty it was to enforce it, or to report infractions thereof as to amount to an abrogation of the rule. It is true the defendant introduced proof by uncontradicted testimony that a division master mechanic of the company visited Newport about six months before Sharp's injury for the purpose of giving instructions to the men upon the rules of safety, and impressed upon them the duty of observing this rule concerning the use of the flags by car repairers; but we do not understand the law to be that this absolved the company from the consequences of acquiescence, in other respects, in the general and habitual violation of the rule. The proof is sufficient to establish the abrogation of the rule within

the period subsequent to the visit of the master mechanic. We do not mean to hold that the employees may establish a rule or custom for themselves, or abrogate a rule promulgated by the employer, over the protest of the employer; but we think the proof in this case is sufficient to show an acquiescence on the part of the employer. In order to constitute an abrogation of the rule, there must be acquiescence on the part of the employer, either in express terms or by silence after knowledge of habitual violation of the rule. The law on this subject has been fully discussed in other cases. *St. Louis, I. M. & S. Ry. Co.* v. *Caraway,* 77 Ark. 405; *St. Louis, I. M. & S. Ry. Co.* v. *Dupree,* 84 Ark. 377; *St. Louis, I. M. & S. Ry. Co.* v. *Wirbel,* 108 Ark. 437.

(4)   In the Caraway case, *supra,* we quoted with approval the following statement of the law from Mr. Labatt: "A custom in violation of a rule, known and acquiesced in by the employer or his representatives, amounts to an abandonment of the rule, to the extent to which the custom infringes the rule.   *   *   *   In other words, evidence that the rule in question was habitually violated to the knowledge of the employer is admissible for the purpose of repelling the inference which would otherwise be drawn, as a matter of law, when the violation is proved." 1 Labatt, § 232. In the same case we said that "knowledge of the company may be inferred from the notoriety of the habitual custom of the employees in disregarding the rule."

The Dupree case, *supra,* was identical with this one in that it was a suit by a car repairer on account of injuries received, and the company proved a rule the same as in this case, and the plaintiff undertook to show an abrogation of the rule. Following the law as stated in the Caraway case, we said that "where such rule is habitually violated, and such violation is known to or acquiesced in by the master, so that it amounts to an abandonment of the rule, then evidence of such habitual violation is admissible for the purpose of repelling the in-

ference which would otherwise be drawn from the existence of the rule itself.''

In another case (*El Dorado & Bastrop Railroad Company* v. *Whatley,* 88 Ark. 20), we cited with approval the following statement of the law by the Supreme Court of Alabama: ''Custom and usage may be relied upon to excuse the violation of a rule when the act involved is not negligent in itself, but only by relation to the rule violated; and so, when an act may be done in two or more ways, a resort to neither of which involves such obvious peril as raises the legal presumption or conclusion of negligence in the doing of it, a custom or usage to do it in a particular way may be looked to as tending to show that it was not negligence to resort to that method in the instance under consideration. But custom can in no case impart the qualities of due care and prudence to an act which involves obvious peril, which is voluntarily and unnecessarily done, and which the law itself declares to be negligent.'' (Citing authorities.) *Warden* v. *L. & N. Rd. Co.,* 14 L. R. A. 552.

(5) The doctrine thus announced by the Alabama court has no application here, for it can not be said as a matter of law that it is obviously dangerous for a repairer to go underneath a car without putting out danger signals where, according to the custom among workmen, he has reason to assume that he will be protected. Now, the proof in this case is that the car was shifted to the place where Sharp was injured by the same switch crew that afterward kicked the car in on this track; that a member of the switch crew had a conversation with Sharp a short while before he started to work on the car, in which conversation mention was made of the fact that work on the car was about to be done by Sharp and his co-worker; and the jury had a right to find from the evidence that the members of the switch crew knew that Sharp and his companion were at work on the car at the time they kicked cars in on this sidetrack. If that was true, and the rule requiring use of flags had been abrogated, it constituted an act of negligence on the part of

the switch crew which rendered the company liable. We are not laying down the law to be that employees have the right to establish rules for the employer, or contrary to his directions; but we do say that where the testimony, as in this case, is sufficient to show an abrogation of the rule, it warrants the jury in finding that the employee was not guilty of negligence in failing to display flags; and that other employees who knew, or had reason to believe, that he was under the car, were guilty of an act of negligence which rendered the employer liable, under the doctrine of *respondeat superior.*

The instructions given by the court at the request of the plaintiff are not in conflict with the views here expressed, and we think correctly submitted the issues to the jury. Timely objections were made by the defendant to each of the instructions given at the plaintiff's request, and exceptions were duly saved but we deem it unnecessary to discuss those instructions in detail or to set them out, except one, which reads as follows:

"2. Although you may find from the evidence that, at the time of the injury to W. N. Sharp, the defendant had in force a rule requiring its employees to display a blue flag or flags while performing work in its yards, still, if you find from the evidence that for a number of years this rule had been openly, continuously and habitually disregarded by the employees of defendant for such period and for such an extent during said time down to the date of said injury as to lead to and justify the belief that the rule had been abrogated by the company, or its nonobservance acquiesced in, then the failure to obey said rule by the said W. N. Sharp will not of itself prevent a recovery, provided that you find that the nonobservance of the rule was known to the defendant or was for a long period and of so frequent occurrence as to cause you to believe that defendant must have known or acquiesced in its nonobservance; and in determining whether or not the rule has been abrogated, or its nonobservance acquiesced in by the company, you may take into consideration the period of time, the extent of open-

ness with which the rule had been violated by the employees of the defendant, if you find from the evidence that the rule had been violated.''

(6)    It will be noted that this instruction relates to the rule of the company, the alleged abrogation of it, and its effect upon the question of Sharp's contributory negligence.    It is earnestly insisted that the language used amounts to an instruction upon the weight of the evidence and tells the jury in effect that the act of Sharp in doing his work contrary to the rule did not constitute contributory negligence.    We do not think the instruction is open to that objection, for the obvious purpose of the court in giving this instruction was to tell the jury that if the rule had been abrogated, with the knowledge and acquiescence of the company, its nonobservance by Sharp would not, as a matter of law, constitute contributory negligence. Other instructions which submit the question of contributory negligence make this view of it plain; and if it was thought that any other construction would be placed upon it, there should have been a specific objection.    The instruction, however, based upon the terms of the Federal statute, which controls in this case, was not technically incorrect; for under that statute contributory negligence does not bar a recovery, whether it be a violation of the rules or some other act of negligence.    The statute provides that in such cases ''the fact that the employee may have been guilty of contributory negligence shall not bar the recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.''    It will be observed that this instruction does not attempt to lay down any basis for measuring the negligence of the company or its other servants, but merely declares that the nonobservance of the rule will not of itself bar a recovery provided the jury found that the rule had been abrogated.    Notwithstanding the abrogation of the rule, it was a question for the jury to determine whether or not under the particular circumstances Sharp was guilty of contributory negligence; but this instruction does not take away from the

jury the right to consider the conduct of Sharp for that purpose, and merely declares that the nonobservance of the rule will not of itself bar a recovery. We think that the instruction was technically correct, under the law as declared in the Federal statute, and that there was no error in giving it.

The question of assumed risk is not, we think, involved in this case, since the jury has found that the rule promulgated by the company had been abrogated.

There are other questions raised which we do not think of sufficient importance to discuss. It is urged that the verdict is excessive, but we think the testimony is abundant to sustain the amount of damages assessed by the jury.

The judgment is therefore affirmed.