CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. SMITH.

Opinion delivered December 7, 1914.

1. MASTER AND SERVANT—RELATIONSHIP—LINE OF EMPLOYMENT—PERSONAL INJURIES.—A railway fireman is an employee and acting within the line of his employment, while going from one place on defendant railroad's line to another place, to assume the duties of a position at another place, in the line of promotion.

2. RAILROADS—TRESPASSER—CUSTOM AND USAGE.—An employee of defendant railroad will not be held to be a trespasser when riding on an extra train, while in the line of his employment, contrary to the rules of the company, when the rule is shown by custom to have been abrogated.

3. RAILROADS—RULES—ABBROGATION BY CUSTOM.—A rule prohibiting employees of a railroad company from riding in the engine cab, *held,* abrogated by proof of a custom that firemen, while being transported to a place to take a run, usually rode in the cab of the engine.

4. MASTER AND SERVANT—RULES—ABROGATION.—A rule for the protection of employees may be abrogated by a general custom built up within the knowledge of those whose duty it is to enforce the rule or to report infractions thereof.

5. RAILROADS—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.—It is not negligence as a matter of law for a railroad fireman to ride in the cab of an engine, while being transported to a place where he is to take up a new run for the company.

6. RAILROADS—INJURY TO SERVANT—LIABILITY.—A railroad company will be liable in damages for an injury to a fireman, who was injured by negligence, while being transported to a new place where he was assigned, while riding on an extra train, and riding in the cab of the engine, such acts not being in themselves acts of negli-

gence, and where the rules prohibiting them, were shown by the proof to have been abrogated.

Appeal from Grant Circuit Court; *W. H. Evans,* Judge; affirmed.

*Thomas S. Buzbee* and *John T. Hicks,* for appellant.

1. Appellee was a trespasser. If he ever was a passenger he became a trespasser when he was riding on the engine at the time of his injury. He was on the train in violation of the rules of the company, which he knew. 4 Labatt, Master & Servant, 4698, 4697; 166 S. W. 958; 27 So. 646; 17 App. Div. 116; 45 N. Y. Supp. 93. He had no duty to perform on the engine, and was on the train contrary to the rules.

2. It was error to modify defendant's instructions. A passenger who voluntarily assumes a dangerous or forbidden position on a train can not recover even if the company is negligent. Riding on an engine, cow-catcher or pilot is clearly contributory negligence. Elliott, on R. R., § 1632-3; 3 Hutchinson on Carriers (3 ed.), § 1218; 46 S. W. 760. The only duty owed by the company was not to wantonly injure him. 83 Va. 375; 22 Barb. 91; 40 Ark. 298; 163 Fed. 106; 83 Ill. 448.

3. *Res ipsa loquitur* applies in this case. He voluntarily placed himself in a position of danger. The jury should have been instructed to find for defendant. 63 S. W. 1034; 100 Ill. App. 148; 162 Fed. 665; 75 Pac. 212; 74 N. E. 1014; 217 Ill. 140; 117 Fed. 127; 61 S. E. 900; 91 Pac. 883.

*Mehaffy, Reid & Mehaffy,* and *Ben D. Brickhouse,* for appellee.

1. Smith was an employee and not a trespasser. While an employee is not strictly a passenger, the company owes him the duty of exercising ordinary care for his protection. 85 Ark. 503; 90 N. W. 122; 32 So. 460; 64 S. E. 112; 63 Atl. 488; 83 N. W. 360; 108 Fed. 934; 74 N. E. 1097; 78 Ark. 505; 87 Pac. 698, 83 Pac. 439; 66 Atl. 884; 41 So. 638; 22 N. W. 802; 52 N. E. 471. See also 99 N. Y. S. 923; 74 N. W. 751; 82 N. Y. S. 527; 68 S. W.

364; 29 So. 990; 62 N. E. 853. The ultimate test of master and servant is the right or duty to control. 47 N. E. 90; 83 Ark. 302; 1 Labatt on Master & Servant, p. 10; 129 Fed. 548.

2. Railroad men on trains doing what they are in the habit of doing, and especially when with the knowledge and acquiescence of the persons in authority are not trespassers. Nor can it be said plaintiff was guilty of contributory negligence in riding where employees usually rode. 88 Ark. 20; 116 S. W. 458.

3. Plaintiff was rightfully on that special train by permission of the proper officer communicated through the callboy. 196 Fed. 336; 57 U. S. (L. Ed.) 1125; 180 Fed. 630.

4. Rules of the company may be abrogated by custom or constant violation by officers. 48 Ark. 333; 77 Ark. 405; 88 *Id.* 204.

5. If the instructions as a whole correctly state the law, this court will not reverse for errors in one or more charges. 78 Ark. 132; 80 *Id.* 19, 360; 97 *Id.* 226-358; 95 *Id.* 209; 93 *Id.* 140-548, etc., 151 S. W. 119.

McCulloch, C. J. The plaintiff was in the employment of defendant as a fireman on the latter's road, and had a run out of El Dorado on what is termed the Louisiana Division. A vacancy occurred in the fireman's place on an extra passenger run out of Little Rock and plaintiff, by virtue of his seniority, was entitled to promotion to that place. He lived at El Dorado, and when the vacancy occurred, he claimed it, and transportation was furnished him with an order authorizing him to assume the vacant place and displace another fireman who had been assigned to it. The order and the pass were delivered to him at El Dorado by the callboy a short time before a northbound passenger train was due according to schedule, but the passenger train was several hours late and the callboy directed plaintiff to board a special which was then about to leave for Little Rock. The special was composed only of an engine, tender and caboose, equipped with a full crew of men. Plaintiff boarded the

train, and for a time rode in the caboose, but later climbed over the tender and entered the cab of the engine, and was standing there talking to the engineer when the engine struck a defective part of the track and was derailed. The engine turned over and plaintiff sustained serious personal injuries. He sues to recover compensation for the injuries on the ground that the company was negligent in letting the track get out of repair, which caused the derailment of the engine. It is also urged as ground of negligence that the train was being operated at an excessive and dangerous speed.

There is no contention on the part of the defendant that the evidence is not sufficient to establish negligence in these particulars, but it is insisted that there is no liability to plaintiff on account of his injuries for the reason that he had no right to ride on that train; and that if he did have the right to ride on the train, his own act in assuming to ride on the engine bars his recovery. In other words, the contention on the part of the defendant is that the plaintiff was a trespasser in attempting to ride on the engine; or that if he is held to be a passenger, he was guilty of contributory negligence in riding in an extra hazardous place contrary to the rules.

The question whether or not plaintiff was a trespasser at the time he was injured turns upon his right to ride on that particular train, a subject which will be treated later. There is much controversy as to his status, whether a passenger or employee, while pursuing his journey to Little Rock. There is a rule of the company which reads as follows:

"A fireman going to take a better run, or benefit himself (as he is permitted to do under his seniority rights, per article 19), will not be paid deadhead mileage. The fireman who is relieved, however, by such a move, will be paid deadhead mileage to his home terminal."

(1) It is undisputed that the plaintiff was making the trip for the purpose of taking a better run, and to benefit himself, within the meaning of the rule just

quoted, but that rule relates only to his right to demand mileage while making the trip, and not to his status as an employee. Even though he was making the trip to benefit himself, within the meaning of the rule, he was within the line of his duty. We think, therefore, that, according to the undisputed evidence, he was an employee and was within the line of his duty in making the trip to Little Rock for the purpose of taking another run under the orders of his superior. That issue, and the manner in which it was submitted to the jury, deserves, therefore, no further consideration.

The further questions, whether plaintiff was entitled to ride on that particular train, and, when he did so, whether or not he was guilty of negligence in riding on the engine, are matters of more serious concern. Plaintiff was an employee within the line of his duties, but he had no duties to discharge with reference to the operation of this train. He was not a passenger, but if he was rightfully on the train and in the place where he was at the time he was injured, the defendant owed him a degree of care to protect him from injury. *St. Louis, I. M. & S. Ry. Co. v. Harmon,* 85 Ark. 503.

(2)    Let us consider next the question of the plaintiff's right to ride on the extra train. The rules of the company provide that passes such as was issued to the plaintiff, are good only for passage ''on freight trains designated in the current time tables as trains upon which passengers are allowed to be carried when regulations governing such passage have been complied with, unless otherwise endorsed by the president or second vice president.'' The pass issued to the plaintiff was not endorsed by the officers named, and therefore did not of itself give him the right to ride on the extra train. The evidence, however, establishes a general custom contrary to this rule, and it was customary for authority to be given through the callboy for trainmen assigned on a run to ride on an extra. The testimony in this instance is to the effect that the callboy directed the plaintiff to ride on this train on account of the delay of the passenger train.

The undisputed evidence is that the callboy was a mere messenger, and had no authority to originate such a direction, but he was the conduit through whom authoritative directions were conveyed to the trainmen, and the plaintiff had the right to assume that the message delivered to him by the callboy was authoritative, and he was therefore within his rights when he boarded the extra train. We are therefore of the opinion that he did not make himself a trespasser in thus taking passage on the extra train, notwithstanding the fact that it was contrary to the printed rules of the company, for the evidence is sufficient to show a custom, so general and so well known to those whose duty it was to enforce it, that it amounted to an abrogation of the rule.

(3-4) Another printed rule of the company provides that "no person or employee, other than those whose duties pertain thereto, or who may have supervision over those so employed, shall ride on locomotives or in express or baggage cars, unless holding transportation bearing proper endorsement of or a letter permit issued by the president or second vice president." There is evidence, too, to warrant the finding that this rule was abrogated by a custom in conflict with it so general as to amount to an abrogation. There is abundant testimony that firemen, while being transported to a place to take a run, usually rode in the cab of the engine. Some of the testimony goes to the effect that this was known to the higher officials of the road, but the testimony is still more abundant that that violation of the rule was habitually done within the knowledge of conductors and engineers, whose duty it was to enforce the rule while it existed. The conductor was specially charged by a rule of the company to control his train and to see that employees were in their proper places on the train, and that other persons should not be permitted to ride in places not authorized by the rules. The law is well settled that a rule for the protection of employees may be abrogated by a general custom built up within the knowledge of

those whose duty it is to enforce the rule or to report infractions thereon. *St. Louis, I. M. & S. Ry. Co.* v. *Caraway,* 77 Ark. 405; *St. Louis, I. M. & S. Ry. Co.* v. *Dupree,* 84 Ark. 377; *St. Louis, I. M. & S. Ry. Co.* v. *Sharp,* 115 Ark. 308. In the *Caraway* case, *supra,* we held that the conductor was the person whose duty it was to enforce the rule with respect to the management of a train, and that knowledge on his part of a custom in conflict with the printed rules was sufficient to amount to an acquiescence.

(5)   The evidence being sufficient to show that the rule was abrogated, it can not be said as a matter of law that the plaintiff was guilty of contributory negligence in riding on the engine. That was a question of fact for the determination of the jury. It is the business of firemen to perform their duties while riding in engines; and though the plaintiff had no duty to discharge, it can not be said to be necessarily so dangerous to ride in an engine that it constitutes negligence.

In the case of *L. R. & F. S. Ry.* v. *Miles,* 40 Ark. 298, the court said: "The conductor is charged with the administration of these rules and doubtless if the passenger rides in an improper place, for example in the baggage, express or postal car, or in a caboose attached to the train or on the platform, by the conductor's permission, or with his acquiescence, this would exempt the passenger from blame, and in case of accident to him resulting from the company's negligence, he might recover damages."

Counsel for defendant rely upon language used by the court in the recent case of *Triangle Lumber Co.* v. *Acree,* 112 Ark. 534, 166 S. W. 958, where we said that, "Where an injured servant was occupying a dangerous position at the time of his injury merely for his own convenience and accommodation, his rights are no greater than those of a licensee." That was said in a case where an employee was injured in the discharge of his duties, and it was contended that he voluntarily and unnecessarily put himself in a place of danger. That rule has no application here if the plaintiff violated no rule of the

company, and was not guilty of negligence; and, as before stated, we can not say as a matter of law that it was negligence for him to ride in the engine.

(6) It is unnecessary to discuss the instructions in this case, for we are of the opinion that they do not violate any of the principles herein announced, but submitted the case to the jury in conformity with those principles. The contention of defendant's counsel is that the case was tried entirely upon the wrong theory, but we do not agree with them in that contention. The verdict in plaintiff's favor was supported by sufficient evidence, and the law was not incorrectly announced in submitting the issues to the jury.

The judgment is therefore affirmed.

HART, J., concurs.